COMMONWEALTH *vs.* VINCENT EDWARD DUBOIS.

Bristol.     October 2, 1967. — November 1, 1967.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & SPIEGEL, JJ.

*Rape. Identity. Arrest. Practice, Criminal,* Arraignment. *Evidence,* Fingerprints.

Evidence at the trial of an indictment for rape of an elderly widow by a stranger who came to the door of her house and followed her into it after she had given him a glass of water and then assaulted her warranted findings that the defendant had had the opportunity to be at the victim's house at the time the crime was committed, that he was the man to whom she gave the water, and that he was guilty of the crime charged. [225]

Detention in State police barracks of a defendant indicted for rape from about 7:30 P.M. on a midwinter evening in 1966, when he arrived at the barracks after being arrested in another State, until he was taken to court the next morning was not unreasonable, and there was no error in denial of a motion to suppress evidence of an identification of the defendant by the victim at the barracks during the detention on the alleged ground that the detention was unlawful. [226]

Fingerprints of the defendant in a criminal case taken at State police barracks while he was detained there were not the "fruit" of the detention and alleged unlawfulness of the detention did not preclude use of the fingerprints at the trial. [227]

Commonwealth *v*. Dubois.

INDICTMENT found and returned in the Superior Court on November 5, 1965.

A motion to suppress was heard by *Moynihan*, J., and the case was tried before him.

*Reuben Goodman (Edward J. Harrington, Jr.*, with him) for the defendant.

*Edmund Dinis*, District Attorney, & *Roger F. Sullivan*, Assistant District Attorney, for the Commonwealth, submitted a brief.

KIRK, J. The defendant was tried under G. L. c. 278, §§ 33A–33G, and convicted of rape. In his appeal he has assigned as error the denial of his motion for a directed verdict and his motion to suppress evidence. We deal first with the motion for a directed verdict.

The trial commenced on November 7, 1966. There was evidence that between twelve noon and one o'clock on September 28, 1965, a man came to the door of the dwelling of Mrs. Ina B. Dwyer, an eighty-one year old widow, on Pleasant Street, Raynham. The man told Mrs. Dwyer that his car had broken down, asked where the garage was, and whether her husband was at home. She replied that she was a widow. He then asked her for a glass of water which she gave him. He followed her into the house, seized her, forced her to the floor and then to a prone position on the couch where he raped her. After the intruder had gone, she sought help from a neighbor. Police were summoned. Mrs. Dwyer was examined by a physician who found bruises on the genitalia and traces of viable sperm in the vagina. In the kitchen of the dwelling the police found a jelly jar, used by Mrs. Dwyer as a drinking glass, which bore a single clear latent fingerprint. There was expert testimony that the latent print was identical with the print of the defendant's middle right finger taken by the police when the defendant was in their custody. Mrs. Dwyer was in a wheelchair at the trial. She said that her sight was not good. She was wheeled along the jury rail and looked at the jurors. When she approached the box in which the defendant sat, she pointed at him and said, "That man

right there. It looks like him." The defendant took the stand and testified that he was employed as a driver of a tractor and trailer for a New Bedford lumber company; that on September 28, 1965, he left New Bedford at 7 A.M. with a load, made deliveries at Norwood and Franklin and returned to New Bedford at 3 P.M. In detail, he testified that he arrived at Norwood at 9 A.M., dropped off part of his load, and left Norwood at 10 A.M.; that at 11 A.M. he stopped on the road to Franklin to eat his lunch which he had with him; that he resumed driving at 11:30 A.M., went a short distance, and then stopped to fix a flat tire on the trailer. He arrived at Franklin where he unloaded and remained until 2 P.M. He denied having been in Mrs. Dwyer's dwelling. On cross-examination it appeared that his log entries showed that he had been actually driving a total of two hours between the time he left Norwood at 10 A.M. and his arrival at Franklin at 12:30 P.M. There was evidence that Pleasant Street, Raynham, was two miles south of the turnoff designated as Route 104 on Route 24, the principal north-south artery which connects with roads leading southeast to New Bedford and west and northwest into Norfolk County. On the evidence, disregarding the eyewitness identification, the jury could find that the defendant had the opportunity to be at the Dwyer dwelling at the time the crime was committed, that he, and no one else, was the person to whom she gave the glass of water, that he assaulted her, and they could say, with the degree of certainty that the law requires, that he was guilty of the crime charged. "A jury may find a crime proved beyond a reasonable doubt even though the inference of guilt from the facts established is not inescapable or necessary." *Commonwealth* v. *Ehrlich*, 308 Mass. 498, 500.

Immediately before trial, the judge heard the defendant's motion to suppress evidence obtained by the Massachusetts State Police following his arrest in New York. At the hearing it appeared that the defendant was indicted for the crime on November 5, 1965. A week later a bench warrant for

his arrest was issued in the Superior Court at New Bedford. In January, 1966, two State police officers went to upstate New York, where the defendant was in custody. He waived rendition proceedings and accompanied the Massachusetts officers to the Middleborough barracks where they arrived about 7:30 P.M. on January 12, 1966. He was without counsel. The defendant was told to take any place in a lineup with five other men. Mrs. Dwyer was brought to the barracks. Mrs. Dwyer looked over the men and said that the defendant looked like the man. The defendant was interrogated by the police. He stayed overnight at the barracks, was fingerprinted on the morning of January 13, and then taken to New Bedford. The judge allowed the defendant's motion to suppress in so far as it related to any statements made by the defendant, but denied it in so far as it related to evidence of fingerprint identification and eyewitness identification of the defendant.

In accordance with the judge's ruling, no evidence of communications by the defendant to the police was admitted. In addition, no reference was made at the trial to the fact that the defendant had been in a lineup at the barracks and that an identification of sorts had there been made. The defendant contends, however, that the overnight detention at the barracks was unlawful and that all that took place there and all evidence stemming from what took place there should be suppressed. We reject the contention for several reasons. Although our cases require that a defendant be brought into court as soon as reasonably possible after arrest (*Tubbs* v. *Tukey*, 3 Cush. 438, *Keefe* v. *Hart*, 213 Mass. 476, *Commonwealth* v. *DiStasio*, 294 Mass. 273), we are not prepared to say that the delay in the circumstances here disclosed was unreasonable. *Commonwealth* v. *Banuchi*, 335 Mass. 649, 656. The judge did not find that it was unlawful. The time of arrival at Middleborough in midwinter leads us to the obvious conclusion that the court at New Bedford would have been closed if the defendant had been taken there. In any event, a finding that the delay was unlawful would not require a different result. The cases of *McNabb* v.

*United States,* 318 U. S. 332, and *Mallory* v. *United States,* 354 U. S. 449, upon which the defendant relies, even if factually analogous, which we do not concede, would not be controlling since they rest upon the supervisory powers of the Supreme Court of the United States over the Federal courts and not upon want of due process or other constitutional requirement. This court has not adopted the *McNabb-Mallory* rule (*Commonwealth* v. *Banuchi,* 335 Mass. 649, *Commonwealth* v. *Chase,* 350 Mass. 738), and the case before us does not persuade us to do so. Further, although we think that Mrs. Dwyer's court room identification, such as it was, of the defendant in November, 1966, cannot reasonably be said to be the "fruit" of an identification at the barracks on January 12, 1966, we do not pause "to establish that the in-court identifications had an independent source, or that . . . [its] introduction in evidence was . . . harmless error" (*Gilbert* v. *California,* 388 U. S. 263, 272, *United States* v. *Wade,* 388 U. S. 218), since the Supreme Court of the United States has held that the *Gilbert* and *Wade* cases, decided June 12, 1967, are not retroactive in their application, *Stovall* v. *Denno,* 388 U. S. 293, 300. The out-of-court identification having taken place before June 12, 1967, the rule in the *Wade* and *Gilbert* cases does not apply to the case at bar. *Stovall* v. *Denno,* 388 U. S. 293, 296. Finally, the use of the defendant's fingerprints taken at the barracks to identify him as the criminal attacker was not the "fruit" of his detention in Middleborough. It is axiomatic that fingerprints never change. Since the prosecution was entitled to them at any time and since no benefit accrued to the prosecution because they were obtained at the barracks rather than elsewhere, it is misleading to say that they are the "fruit" of the detention, and it is pointless to suppress them when they could be obtained again immediately.

*Judgment affirmed.*