COMMONWEALTH *vs.* EDWARD M. FRODYMA.

Hampshire. October 2, 1984. — December 10, 1984.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Search and Seizure,* Controlled substances, Warrant, Seizure by Federal authorities. *Constitutional Law,* Search and seizure.

A pharmacist on trial for violations of the Controlled Substances Act, G. L. c. 94C, was not entitled to suppression of certain records alleged to have been illegally seized from a pharmacy by Federal authorities, where the State warrant under which the records were later seized from Federal custody had been based on a constitutionally adequate application setting out information known to State law enforcement officers prior to and independently of the allegedly illegal Federal seizure. [440-443]

INDICTMENTS found and returned in the Superior Court Department on April 17, 1980.

The cases were tried before *Robert S. Prince,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Samuel A. Marsella* for the defendant.

*Frances L. Robinson,* Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J. On May 20, 1983, Edward M. Frodyma, a registered pharmacist who operated a pharmacy in Hatfield, was found guilty in the Superior Court on nine indictments charging unauthorized distribution of controlled substances. G. L. c. 94C, § 17. He received a sentence of one year, which was suspended, and three years' probation. The defendant appeals from his convictions, arguing that the trial judge wrongly denied a motion to suppress certain records maintained by the defendant in the course of operating the pharmacy. We conclude that there was no error in the judge's denial of the motion to suppress and we affirm the convictions.

The facts are as follows.[1] On March 5, 1980, Joseph T. LaBelle, an agent of the Board of Registration in Pharmacy, entered the Hatfield Pharmacy, Inc., to conduct a routine inspection to determine whether the defendant was complying with the Controlled Substances Act. G. L. c. 94C. At LaBelle's request, the defendant voluntarily produced eleven order forms used to purchase controlled substances and a prescription file which should have reflected their sale. On the basis of an inspection of these records, and of an inventory of drugs on the premises, the agent concluded that the defendant had not accounted for a shortage of thousands of dosages of controlled substances.[2] Nor could the defendant explain the shortage when questioned about it. Agent LaBelle then proceeded to a District Court in Hampshire County where he obtained an administrative warrant to seize the records he had examined at the pharmacy. See G. L. c. 94C, § 30.

On April 1, 1981, a judge in the Superior Court ordered that these records be suppressed and that they be returned to the defendant, on the ground that the administrative warrant authorizing the seizure was not sufficiently specific. However, the judge also noted that "since the original inspection apparently furnished probable cause to believe that the documents do constitute evidence of criminal activity, and since that inspection was perfectly legal, there should be nothing to preclude a new seizure of those documents on a properly drafted warrant."[3]

---

[1] For a more complete statement of some of the relevant events, see *Commonwealth* v. *Frodyma,* 386 Mass. 434, 435-437 (1982).

[2] It was ultimately determined that the defendant was unable to account for the disposition of the following drugs purchased between July 4, 1978, and March 2, 1980: 26,719 dosages of Percodan; 8,300 dosages of Dilaudid; 195 grains of Dilaudid powder; 3,384 dosages of Quaaludes; 3,100 dosages of Biphetamine; 2,284 dosages of Tylox; 2,286 dosages of Desoxyn; two and one-half fluid ounces of Tincture of Opium; 1,094 dosages of Seconal, and 1,500 dosages of Parest.

[3] On June 3, 1982, we affirmed the suppression of the materials obtained by the State administrative seizure, *Frodyma I, supra,* but also agreed with the judge "that the information gained from [LaBelle's] original inspection may be used to establish probable cause for the issuance of a properly drafted warrant." *Id.* at 449 n.18. For a similar suppression ruling, see *Lord*

In January, 1982, the Federal Drug Enforcement Administration (DEA) applied to the United States District Court for the District of Massachusetts for a Federal administrative warrant, 21 U.S.C. § 880 (1982), in conjunction with a civil suit which had been commenced against Frodyma in August, 1980.[4] On January 7, 1982, DEA Agent Patrick E. Hunt went to the pharmacy, accompanied by Agent LaBelle. LaBelle, in accord with the Superior Court judge's order of April 1, 1981, returned the records he had previously seized from the pharmacy in 1980. The defendant refused to sign a receipt for the materials, although the judge below found that the defendant did, for a time, have "constructive possession" of the records. DEA Agent Hunt then handed the defendant a copy of the Federal administrative warrant, and seized the materials which LaBelle had just returned. In late September, 1982, a Superior Court judge issued a warrant authorizing State officials to seize the defendant's records from the DEA. The warrant was executed by Agent LaBelle on October 7, 1982. On June 15, 1983, the judge denied the defendant's motion to suppress these records.

The defendant argues that the Commonwealth's seizure of these materials from the DEA was impermissibly tainted by the purported illegality of the Federal administrative warrant.[5] See generally *Wong Sun* v. *United States,* 371 U.S. 471 (1963). We disagree. Even assuming, without deciding, that the defendant's arguments with respect to the invalidity of the Federal warrant are correct, we conclude that the probable cause on which the seizure from the DEA was based emanated from an "independent source," *Segura* v. *United States,* 468, U.S. 796, 814 (1984); *Silverthorne Lumber Co.* v. *United States,* 251 U.S. 385, 392 (1920), and thus that the denial of the defendant's motion to suppress was entirely constitutional.

v. *Kelley,* 223 F. Supp. 684, 691 (D. Mass. 1963), appeal dismissed, 334 F.2d 742 (1st Cir. 1964), cert. denied, 379 U.S. 961 (1965).

[4] The civil complaint alleged ten counts of failure to record properly all sales of controlled substances under 21 U.S.C. § 827(a) (1982).

[5] The defendant contends that the Federal administrative seizure violated the defendant's Fourth Amendment rights because the warrant lacked specificity, and because the probable cause supporting the warrant was obtained solely from the invalid State administrative seizure.

Evidence which may have been unlawfully seized does not, as the defendant contends, "automatically become 'sacred and inaccessible.'" *Nix* v. *Williams,* 467 U.S. 431, 441 (1984), quoting *Silverthorne Lumber Co.* v. *United States, supra.* Instead the "apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" *Wong Sun* v. *United States, supra* at 488, quoting J.M. Maguire, Evidence of Guilt § 5.07, at 221 (1959). Accordingly, the records at issue here are admissible if they were obtained by means which are independent of the allegedly unconstitutional Federal seizure. See *Commonwealth* v. *Paszko,* 391 Mass. 164, 186 (1984); *Commonwealth* v. *King,* 389 Mass. 233, 245 (1983); *Commonwealth* v. *Benoit,* 382 Mass. 210, 216 (1981); *Segura* v. *United States, supra*; *Nix* v. *Williams, supra* at 443.

On the basis of the information which Agent LaBelle obtained from the lawful, consensual search of the pharmacy on March 5, 1980, which occurred prior to the invalid State administrative seizure, the district attorney obtained a warrant on September 30, 1982, to seize specified order forms and a prescription file. The defendant does not, and could not, challenge the legitimacy of Agent LaBelle's initial search. The trial judge found that it was "perfectly legal," and this court agreed. *Commonwealth* v. *Frodyma,* 386 Mass. 434, 449 n.18 (1982). Nor is it open to question that the information gleaned from that legitimate search was sufficient to constitute probable cause to justify the seizure from the DEA. See *Commonwealth* v. *Cinelli,* 389 Mass. 197, 213 (1983). Finally, the defendant does not and could not dispute the fact that the warrant authorizing the seizure from the DEA fully complied with the Fourth Amendment specificity requirement.

In light of these circumstances, we fail to see how the purported invalidity of the Federal warrant might, in any way, have tainted the State seizure. The information set forth in the application for the State warrant was known to the State prior to, and was totally independent of, any information which was

obtained from the Federal seizure. In fact, the application was based almost solely on a summary of LaBelle's initial investigation, and nothing suggests that the State relied on, or "exploited," any information it may have received from the DEA. See *Segura* v. *United States, supra* at 814 (admission of evidence seized pursuant to a valid warrant upheld, where "[n]one of the information on which the warrant was secured was derived from or related in any way to the initial [illegal] entry"). As a result, even if one assumes the illegality of the Federal seizure, where "there is no showing that the evidence sought to be suppressed is an 'exploitation' of [that] primary illegality," *Commonwealth* v. *King, supra,* quoting *Commonwealth* v. *Saia,* 372 Mass. 53, 58 (1977), then the motion to suppress is properly denied.[6] Cf. *Elkins* v. *United States,* 364 U.S. 206, 207 (1960) (evidence seized by Federal government pursuant to warrant based on illegal State seizure properly suppressed); *Commonwealth* v. *Meehan,* 377 Mass. 552, 568 (1979), cert. dismissed, 445 U.S. 39 (1980) (evidence seized pursuant to warrant based on involuntary confession properly suppressed).

Since the State undoubtedly had probable cause to seize legitimately the materials directly from the defendant's pharmacy, there is no reason why it could not also seize the materials from the DEA, after the Federal administrative warrant had been executed. See *Zurcher* v. *Stanford Daily,* 436 U.S. 547, 554 (1978) ("valid warrants may be issued to search *any* property, whether or not occupied by a third party, at which there is probable cause to believe that fruits, instrumentalities, or

---

[6] The United States Court of Appeals for the Ninth Circuit was faced with a similar situation in *United States* v. *Romero,* 585 F.2d 391, 397 (9th Cir. 1978), cert. denied, 440 U.S. 935 (1979). In that case, evidence seized under a State search warrant was suppressed on the ground that the State warrant lacked particularity. Federal warrants were then secured to seize the same material. The validity of the Federal seizures was upheld, because the Federal warrants were based on information obtained prior to the unlawful State seizures. *Id.* at 394-395. See *Commonwealth* v. *Davenport,* 462 Pa. 543, 554 (1975) ("[s]ince the basis for the second seizure antedated, and was totally independent of any information learned from the first unconstitutional seizure," evidence was properly admitted).

evidence of a crime will be found" [emphasis in original]); *Commonwealth* v. *Dubois,* 353 Mass. 223, 227 (1967) (since prosecution legitimately entitled to defendant's fingerprints at any time, fingerprints admissible even if obtained during illegal detention at State police barracks).[7] "[S]ince no benefit accrued to the prosecution," *id.,* because the documents were seized from the DEA rather than directly from the pharmacy, State law enforcement officials should not be punished for alleged inadequacies in the Federal warrant. A contrary result would be wholly inconsistent with a policy of fostering cooperation between State and Federal law enforcement officials.[8] More significantly, suppression of the records seized from the DEA would violate the principle of the independent source doctrine that "the interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a *worse,* position that they would have been in if no police error or misconduct had occurred" (emphasis in original). *Nix* v. *Williams, supra* at 443.

*Judgments affirmed.*

---

[7] Since we assume, solely for the purpose of this case, that the Federal warrant is invalid, we need not consider whether the State needs to procure a warrant to obtain materials which are lawfully in the custody of Federal law enforcement authorities. See, e.g., *United States* v. *Gargotto,* 476 F.2d 1009, 1014 (6th Cir. 1973), cert. denied, 421 U.S. 987 (1975) ("[e]vidence legally obtained by one police agency may be made available to other such agencies without a warrant"); *United States* v. *Lewis,* 504 F.2d 92, 104 (6th Cir. 1974), cert. denied, 421 U.S. 975 (1975) (same); 1 W.R. LaFave, Search and Seizure § 1.3 (1978 & Supp. 1984); but see *United States* v. *Birrell,* 470 F.2d 113 (2d Cir. 1972).

[8] As the United States Court of Appeals for the Second Circuit noted in *United States* v. *DeBerry,* 487 F.2d 448, 451 n.4 (1973), "cooperation and teamwork" between different law enforcement agencies "are a laudable and necessary adjunct to the nationwide attack against drugs, and it does not serve the purpose of the fourth amendment in any way to create unnecessary stumbling blocks to such cooperation."