COMMONWEALTH vs. ROBERT J. FREDETTE.

Essex. October 9, 1985. — December 31, 1985.

Present: HENNESSEY, C.J., WILKINS, LIACOS, LYNCH, & O'CONNOR, JJ.

*Evidence*, Fruits of illegal arrest, Fingerprints, Failure to produce witness. *Search and Seizure*, Fruits of illegal arrest. *Constitutional Law*, Search and seizure. *Arrest. Practice, Criminal*, Assistance of counsel.

The judge in a criminal case did not err in allowing the Commonwealth's motion for the production of the defendant's fingerprints, even though he had earlier ruled that the defendant's arrest had been unlawful and, consequently, had allowed the defendant's motion to suppress fingerprints taken after the arrest, where more than five months had elapsed between the defendant's arrest and the order to produce fingerprints, where during this period the defendant had been indicted and arraigned, and counsel had been appointed to represent him, and where police had probable cause to arrest the defendant established independently of any unlawful police conduct. [458-463]

There was no merit to a criminal defendant's contention that he was denied effective assistance of counsel as a result of defense counsel's failure to renew his objection to an order compelling the defendant to produce fingerprints after certain allegedly improper police conduct was revealed at trial, where the fingerprints were not obtained by exploiting illegal police conduct. [464-465]

There was no merit to a criminal defendant's contention that he was denied effective assistance of counsel as a result of defense counsel's failure to object to certain questions asked by the prosecutor in cross-examining the defendant and a defense witness in an attempt to suggest that the defendant had failed to call other available alibi witnesses, where, in the circumstances, the defendant suffered no prejudice as a result of the prosecutor's questions. [465-467]

INDICTMENTS found and returned in the Superior Court Department on April 28, 1980.

The cases were tried before *John J. Irwin, Jr.*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Eric Brandt*, Committee for Public Counsel Services, for the defendant.

*Robert H. Scarino*, Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J.  The defendant appeals his convictions by a Superior Court jury for breaking and entering a dwelling house in the nighttime, rape, unnatural rape, and assault and battery by means of a dangerous weapon. On appeal, the defendant argues that the admission of certain fingerprint evidence was error and that he did not receive effective assistance of counsel because his trial counsel failed to object to the prosecutor's questioning of witnesses and because trial counsel did not renew objections to the admission of the challenged fingerprint evidence after previously unknown facts came to light at trial. We transferred the case here on our own motion and now affirm the convictions.

Shortly after 1 A.M. on April 17, 1980, an assailant broke into the Newburyport apartment of the thirty year old female victim, held her captive at knifepoint for approximately one and one-half hours, during which time he repeatedly raped her. Newburyport police officers drove the victim to the hospital. On the way to the hospital, the victim noticed a green station wagon parked in the lot in front of her apartment. She told the police that the car was often parked in the lot and that the assailant had asked her permission to park in her parking space prior to breaking down her apartment door. At approximately 5:30 A.M., Officer Patrick Marsh interviewed the victim at the hospital where she was being treated for her injuries. The victim identified the defendant as her assailant after reviewing an array of 132 photographs.[1] Shortly after the victim identified her assailant, police officers investigating the inci-

---

[1] After the defendant's arrest, the victim was shown an array of five photographs. Three of these photographs had been selected by the victim when she viewed the "mug book" because their subjects were similar in appearance to her assailant. The fourth was the photograph of the defendant the victim selected from the "mug book." A photograph taken of the defendant during booking procedures was the fifth photograph. The victim's identification of the defendant from this array was suppressed by the trial judge.

dent informed Officer Marsh that they had ascertained that the green station wagon parked near the victim's apartment was registered to the defendant.[2] At 6 A.M. Officer Marsh and three other officers began looking for the defendant at an apartment located across the street from the victim's apartment. The apartment was leased to the defendant's girl friend and the police knew from past experience with the defendant that he had been living at that address. In addition, the defendant's car registration listed the girl friend's apartment as his address.

The police knocked loudly on the apartment door but there was no answer. A neighbor informed the police that she had heard two people, whom she assumed to be the defendant and his girl friend, walk up the stairs and enter the apartment at 2:30 A.M. She also told the police that the defendant usually left for work at 6 A.M., but that she had not heard him leave that morning.

Officer Marsh left to consult with his supervisor at the Newburyport police station while the three other officers remained stationed in front of the defendant's apartment door. The supervisor telephoned the clerk/magistrate of the Newburyport District Court, Arthur B. Smith, at his home and asked him to come to the courthouse to issue an arrest warrant for the defendant. Smith agreed that probable cause existed to make the arrest. He stated that the police could assume that an arrest warrant was in effect from that point forward and that he would issue a written warrant when he arrived at work that morning.[3]

---

[2] The police apparently determined that the green station wagon was registered in the defendant's name, not by checking the license plate against the motor vehicle registration records, but by entering the car, searching the glove compartment, and obtaining the information from the registration. This information was first revealed through a police officer's testimony at trial. Defense counsel made no objection to the introduction of the registration evidence at the time this information was revealed. During a bench conference later in the trial, the trial judge opined sua sponte that the way the registration information was obtained was "clearly illegal." Assuming, without deciding, that the judge was correct in his opinion, we observe that the sequence of events, shown above, demonstrates that the information regarding the vehicle registration was not involved in the construction of the photographic array shown the victim, and thus probable cause existed for the defendant's arrest, untainted by the registration information.

[3] A written warrant was prepared, but was never signed by Smith.

At approximately 7:10 A.M., Officer Marsh went to the defendant's place of work. On learning that the defendant was not at work, Officer Marsh rejoined the other officers at the apartment where the defendant was living. The officers knocked on the door of the apartment at 7:30 A.M., shouting that they had a warrant for his arrest. When they received no answer, the police entered the apartment forcibly.

The defendant was arrested in the apartment. Two sets of fingerprints were taken at the Newburyport police station. Following his arraignment, a third set of fingerprints was taken. Subsequently, the defendant was indicted and arraigned at the Superior Court in Salem for the crimes of which he ultimately was convicted.

Acting on the defendant's motion to suppress all evidence obtained as a result of his arrest, the trial judge ruled (we think correctly) that the defendant's arrest was unlawful because no valid warrant was obtained and the arrest was made in the defendant's home under nonexigent circumstances. See, e.g., *Commonwealth* v. *Pietrass*, 392 Mass. 892, 897-900 (1984); *Commonwealth* v. *Forde*, 367 Mass. 798, 801-803 (1975). Consequently, the judge suppressed all physical evidence seized pursuant to the unlawful arrest, including the three sets of fingerprints taken on the day of his arrest.

On September 17, the Commonwealth filed a motion for production of fingerprints to compare the fingerprints with latent prints recovered from a bottle of vegetable oil handled by the assailant while in the victim's apartment. The judge allowed the motion, ruling that taking the new set of prints would not violate the defendant's Fourth and Fifth Amendment rights under the United States Constitution.

1. First, we address the defendant's challenge to the trial judge's order allowing the Commonwealth to obtain fingerprints after the defendant had been indicted. The defendant asserts that admission of this evidence violated his rights under the Fourth Amendment to the United States Constitution. In cases like the one presented, where the defendant seeks to suppress information obtained after unlawful police conduct, the issue is whether the evidence challenged has been obtained

by exploiting the illegality or by means sufficiently distinguishable to dissipate the taint. *Wong Sun* v. *United States*, 371 U.S. 471, 488 (1963). *Commonwealth* v. *Frodyma*, 393 Mass. 438, 441 (1984). *Commonwealth* v. *Benoit*, 382 Mass. 210, 216 (1981). *Commonwealth* v. *Haas*, 373 Mass. 545, 551 (1977). See *United States* v. *Crews*, 445 U.S. 463, 476 (1980). The Commonwealth bears the burden of proving that evidence subsequently obtained is untainted. *Commonwealth* v. *Cote*, 386 Mass. 354, 362 (1982).

Even though the Commonwealth bears a heavy burden, "[a]n illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction." *United States* v. *Crews, supra* at 474. *Gerstein* v. *Pugh*, 420 U.S. 103, 119 (1975). Evidence obtained subsequent to unlawful police conduct does not automatically become sacred and inaccessible. *Commonwealth* v. *Frodyma*, 393 Mass. 438, 441 (1984), quoting *Nix* v. *Williams*, 467 U.S. 431, 441 (1984), cert. denied, 471 U.S. 1138 (1985), and quoting *Silverthorne Lumber Co.* v. *United States*, 251 U.S. 385, 392 (1920). An unlawful detention cannot deprive the government of the opportunity to prove guilt through the introduction of evidence wholly untainted by police misconduct. *United States* v. *Crews, supra.*

The United States Supreme Court has determined that evidence need not be excluded under the fruit of the poisonous tree doctrine established in *Wong Sun* v. *United States, supra*, if the government obtained the evidence through an independent source, *Silverthorne* v. *United States, supra*, if the connection between the improper conduct and the derivative evidence has become so attenuated as to dissipate the taint, *Nardone* v. *United States*, 308 U.S. 338, 341 (1939), or if the government can demonstrate that the evidence inevitably would have been discovered by lawful means, *Nix* v. *Williams, supra* at 444-445. See *Commonwealth* v. *Benoit, supra* at 215-218 (discussing exceptions to the fruit of the poisonous tree doctrine and declining to apply the inevitable discovery exception). See also *Commonwealth* v. *Frodyma, supra* at 440 (applying the independent source exception); *Commonwealth* v. *Glavin*, 354 Mass. 69,

72 (1968) (applying the "connection so attenuated as to dissipate the taint" exception). Because we conclude here that the connection between the unlawful police conduct and the evidence the defendant seeks to have suppressed is so attenuated as to dissipate the taint, we need not discuss the application of the independent source and inevitable discovery exceptions to the facts of the case.

In determining whether the connection between the evidence and the improper conduct has become so attenuated as to dissipate the taint, the facts of each case must be examined in light of three factors: the temporal proximity of the arrest to the obtaining of the evidence; the presence of intervening circumstances; and the purpose and flagrancy of the misconduct. *Brown* v. *Illinois*, 422 U.S. 590, 603-604 (1975). *Commonwealth* v. *Bradshaw*, 385 Mass. 244, 258 (1982). Here, more than five months elapsed between the date of the defendant's arrest and the date of the order to produce fingerprints, making suppression on the basis of proximity in time unwarranted. Suppression has not been ordered when shorter intervals elapsed between the unlawful arrest and the obtaining of evidence. See, e.g., *Wong Sun* v. *United States, supra* at 491; *United States* v. *Jarvis*, 560 F.2d 494, 498 (2d Cir. 1977), cert. denied, 435 U.S. 934 (1978); *Commonwealth* v. *Haas, supra* at 556; *Commonwealth* v. *Fielding*, 371 Mass. 97, 100, 114 (1976).

In addition to the lapse of time between the unlawful conduct and the order to produce the fingerprints, several constitutionally significant intervening events occurred during that time. The defendant was indicted and arraigned a second time, and counsel was appointed to represent him. These intervening events further dissipate any taint inuring from the illegal arrest. Cf. *Johnson* v. *Louisiana*, 406 U.S. 356, 365 (1972) (lineup identification not obtained through exploitation of illegal arrest where prior to lineup defendant was brought before a magistrate and where defendant was represented by counsel at the lineup); *Wong Sun* v. *United States, supra* at 491 (connection between confession and illegal arrest became so attenuated as to dissipate the taint where defendant released on own recognizance, and

returned voluntarily to make statement); *Commonwealth* v. *Bradshaw, supra* at 258 (confession not tainted by illegal arrest where defendant given Miranda warnings twice before confession, and over an hour elapsed before statement made).

Finally, the nature of the police conduct here does not warrant suppression of the evidence. This case does not involve exploitation by the government of an illegal arrest or detention to obtain evidence not procurable constitutionally. Compare *United States* v. *Jarvis, supra* at 498-499 (photographs and palmprints not tainted by illegal arrest where probable cause existed to arrest defendant and illegal arrest not a "but for" cause of the introduction of the evidence), with *Hayes* v. *Florida*, 470 U.S. 811, 815-816 (1985) (fingerprints inadmissible where defendant detained illegally for purpose of obtaining fingerprints for comparison with latent prints and probable cause not otherwise established), and *Davis* v. *Mississippi*, 394 U.S. 721, 723 (1969) (same). Although the arrest of the defendant at home without a warrant was illegal, it was supported by probable cause. The purpose of the police in arresting the defendant was not to create an opportunity to obtain fingerprints to enable the police to establish probable cause for his arrest.

If a simple "but for" test is applied to the fingerprint evidence at issue here,[4] the same result is reached. See *Wong Sun* v. *United States, supra* at 487-488; *United States* v. *Jarvis, supra* at 498. Using this test, we consider whether obtaining the challenged evidence would have been impossible "but for" the unlawful arrest. In this case, the answer to the inquiry is in the negative. Once the defendant had been indicted and arraigned with assistance of counsel, the Commonwealth was justified in obtaining fingerprints from the defendant. *Johnson* v. *Louisiana, supra*. Following these events, the fingerprints ordered by the court were not obtained as the exploitation of

---

[4] Generally, a "but for" test is too simplistic a tool for analyzing suppression issues. See *Wong Sun* v. *United States, supra* at 487-488; *Commonwealth* v. *Glavin, supra* at 72. In this situation, however, the test is useful in illustrating how unrelated the fingerprint evidence the defendant seeks to suppress is to the illegality of which he complains.

the challenged arrest. *Id.* Since the prosecution was entitled to the fingerprints at any time, and the prosecution derived no benefit from the illegal arrest, the trial judge acted properly in granting the Commonwealth's motion for production of fingerprints. *Commonwealth* v. *Dubois*, 353 Mass. 223, 227 (1967). The defendant "is not himself a suppressible 'fruit' [of illegal official conduct], and the illegality of his [arrest] cannot deprive the Government of the opportunity to prove his guilt through the introduction of evidence wholly untainted by the police misconduct." *United States* v. *Crews, supra.* This case is distinguishable from cases like *Davis* v. *Mississippi, supra,* and *Hayes* v. *Florida, supra,* where the defendants' identities and connection to the illegalities were first discovered through illegal arrest and fingerprinting. In those cases, the fingerprints were suppressed as fruits of the unlawful detention. See generally *Bynum* v. *United States*, 262 F.2d 465 (D.C. Cir. 1958). Here, as in *United States* v. *Crews, supra* at 476, and *United States* v. *Jarvis, supra* at 499, the authorities possessed sufficient information, established independently of any unlawful official conduct, for suspecting the defendant. *Bynum* v. *United States*, 274 F.2d 767 (D.C. Cir. 1960) (per curiam). The fingerprints were properly admitted here.

The defendant argues "police conduct" more broadly than the Supreme Court cases *supra*, asserting that police action immediately preceding and immediately following his arrest, viewed in its entirety, constitutes more than the "proverbial constable's blunder or even . . . good faith overzealousness in the pursuit of legitimate law enforcement aims." *Commonwealth* v. *Manning*, 373 Mass. 438, 443 (1977). According to the defendant, the unlawful arrest, along with the unlawful photographic array,[5] and the method by which police obtained registration information relating to the defendant's automobile, indicate that the violations of his constitutional rights resulting from the police investigation of the case were the product of deliberate and intentional conduct. See *id.* To allow the Com-

---

[5] See note 1, *supra*, for a description of the unlawful photographic array suppressed by the trial judge.

monwealth to benefit from using the fingerprint evidence, the defendant contends, would compromise judicial integrity and reward improper police conduct. See, e.g., *Commonwealth* v. *Lett*, 393 Mass. 141, 145 (1984) (articulating purposes underlying exclusionary rule). We do not agree. While it is true that the purposes offered to support the exclusionary rule include deterring unlawful police conduct, dissociating courts from such misconduct, and precluding prosecutors from benefitting from unconstitutional police activity, none of these purposes will be served by excluding the fingerprint evidence challenged here. *Commonwealth* v. *Lett, supra.* As we have already stated, the fingerprints at issue were obtained in a manner so far removed from the unlawful conduct that the evidence is no longer afflicted with any taint. Even though the police conduct here was overzealous (but see *Commonwealth* v. *Manning, supra*), the trial judge found, as the evidence warranted, that the arrest in this case was carried out in good faith. Further, the police conduct in this case did not result in any prejudice to the defendant not remedied by suppression of the evidence obtained unlawfully. Compare *Commonwealth* v. *Manning, supra* at 444 (dismissal of indictment necessary remedy for deliberate constitutional violation), with *Commonwealth* v. *Light*, 394 Mass. 112, 114-115 (1985) (no irretrievable prejudice where police misconduct not intentional). Unlike the police conduct challenged in *Manning*, the official actions here were not so flagrant and prejudicial that the defendant's ability to receive a fair trial was irretrievably compromised. See *Commonwealth* v. *Manning, supra.* See also *Commonwealth* v. *Light, supra.* The defendant's presence at trial was not due to any illegal police conduct and the fingerprints produced pursuant to the judge's order cannot fairly be considered the product of any illegality. Excluding from evidence the fingerprints of the defendant would only frustrate the public interest in admitting evidence lawfully obtained and would not further any of the purposes of the exclusionary rule. See *Commonwealth* v. *Lett, supra.* We conclude that the trial judge did not err in ordering the defendant to produce fingerprints and in allowing the fingerprints to be introduced in evidence.

2. As a second basis for reversing his convictions, the defendant claims that he did not receive effective assistance of counsel, citing two specific omissions by his trial counsel. To support this claim the defendant relies on counsel's failure to renew his objection to the order compelling the defendant to produce fingerprints after the means by which the police obtained registration information was revealed at trial. In addition, he cites counsel's failure to object to the prosecutor's questioning of the defendant and an alibi witness in a manner arguably suggesting that the defendant failed to call additional witnesses to corroborate his alibi.[6]

In the face of such claims, we evaluate the attorney's conduct to determine whether the "behavior of counsel fall[s] measurably below that which might be expected from an ordinary fallible lawyer." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). Measured by that standard, the performance of defense counsel here discloses no ground for affording relief to the defendant.

Assuming that the conduct of the police in obtaining the registration information was improper, the failure of defense counsel to renew his objection to the introduction of the fingerprint evidence did not prejudice the defendant. We have already determined, *supra*, that the admission of the fingerprint evidence was proper because the evidence was not obtained by exploiting illegal police conduct. Counsel's failure to object to admissible evidence does not constitute ineffective assistance

---

[6] The defendant also claims that this line of questioning by the prosecutor was error and that, despite defense counsel's failure to object to the line of questioning, he is entitled to a reversal of his convictions because the trial judge failed specifically to instruct the jury to draw no negative inference from this testimony. We observe that a defendant is not entitled to appellate review of alleged errors unless rights are preserved. Only if a substantial risk of a miscarriage of justice exists will appellate courts consider errors to which timely objection is not made. *Commonwealth* v. *Barrows,* 391 Mass. 781, 783 (1984). *Commonwealth* v. *Mahdi,* 388 Mass. 679, 690 (1983). A failure to move to strike an objectionable response to questioning similarly precludes appellate review as a matter of right. *Commonwealth* v. *Miskel,* 364 Mass. 783, 792 (1974). As we conclude that no substantial risk of a miscarriage of justice exists here, the defendant's convictions will not be disturbed on this basis.

of counsel and now to conclude that counsel's failure to object to admissible evidence prejudiced the defendant would be inconsistent.[7]

The defendant's second assertion relates to a line of questioning pursued by the prosecutor with the defendant's girl friend, who testified on the defendant's behalf, and the defendant.[8] These questions were presumably intended to produce evidence to allow the jury to draw a negative inference from the defendant's failure to call witnesses other than his girl friend to corroborate that portion of his alibi. Both witnesses denied being sufficiently acquainted with any of the persons they saw at the lounge or the truck stop restaurant —where they claimed to have been on the evening preceding, and morning during, the attack on the victim — to produce them as alibi witnesses for the defendant's trial. Defense counsel did not object to the questions posed to either witness. The judge stopped the questioning during cross-examination of the second witness, the defendant, and admonished the prosecutor to refrain from alluding to the matter in closing argument. Defense counsel did not request any curative instruction.

In both civil and criminal cases we have permitted, when justified, comment on a party's failure to call witnesses. See,

---

[7] If counsel committed any error regarding the evidence of the illegal search of the defendant's automobile for registration information, his error was in failing to object to the admission of the registration information obtained illegally on the issue of the identity of the victim's assailant. The defendant does not raise this issue, and in any event it has no serious legal importance, judged by the reasoning shown in note 2, *supra*.

[8] The factual circumstances related to these arguments are as follows. The defendant and his girl friend were two of the three alibi witnesses testifying on behalf of the defendant. Both testified that the defendant and the girl friend had arrived at a bar in Lawrence at 8 P.M. on the evening preceding the attack on the victim and had remained there until 12:45 A.M. of the morning of the attack. They also testified that after leaving the bar they went to a truck stop restaurant where they stayed until 1:30 or 1:40 A.M. According to their testimony, they returned to the apartment at 2 A.M. and went to sleep. On cross-examination, the prosecutor questioned both witnesses in an apparent attempt to suggest that other patrons of the lounge and the restaurant were available as alibi witnesses and that the defendant did not call such available witnesses to the stand. Both witnesses denied having seen anyone they knew by name at either the bar or the truck stop.

e.g., *Commonwealth* v. *Cancel,* 394 Mass. 567, 575 (1985); *Commonwealth* v. *Franklin,* 366 Mass. 284, 292 (1974); *Grady* v. *Collins Transp. Co.,* 341 Mass. 502, 506 (1960); *Commonwealth* v. *Domanski,* 332 Mass. 66, 70-71 (1954). While a judge may, however, permit the prosecutor to question defendants about the existence of other potential witnesses, *Commonwealth* v. *Franklin, supra* at 294, a jury should ordinarily not be permitted "to draw inferences from the neglect of a defendant to call witnesses, unless it appears to be within his power to call others than himself, and unless the evidence against him is so strong that, if innocent, he would be expected to call them." *Commonwealth* v. *Franklin, supra* at 293, quoting *Commonwealth* v. *Finnerty,* 148 Mass. 162, 167 (1889).

In this case, the prosecutor pursued this line of questioning with two witnesses when no prior testimony or other evidence suggested that particular alibi witnesses were available who had not been called by the defendant. See *Commonwealth* v. *Domanski, supra* at 71. The prosecutor also gave no advance notice to the defense attorney or to the judge that he intended to pursue this line of questioning.

Arguably, defense counsel should have made immediate and vigorous objection to the questioning. We consider several factors, however, in concluding that no relief is now due the defendant. The prosecutor's questioning produced no evidence that other witnesses were indeed available. After the trial judge admonished the prosecutor, no further questions were asked on this matter and the prosecutor made no argument to the jury regarding the defendant's failure to call witnesses. Although the judge gave no curative instruction immediately following the questioning, he did instruct the jury that the presumption of innocence in a criminal trial means that the defendant in every criminal case has no obligation to prove his innocence because the Commonwealth has the burden of proving guilt beyond a reasonable doubt. Finally, defense counsel could reasonably have concluded that objection or further pursuit of the matter in the hearing of the jury would only add emphasis and importance to the matter. We will not now question counsel's tactical decision not to object. See *Commonwealth* v.

*Daigle*, 379 Mass. 541, 544 (1980). In all the circumstances, no prejudice nor any ground for reversal is shown from counsel's failure to offer objections.

*Judgments affirmed.*