COMMONWEALTH *vs.* WARREN T. HOLMES. No. 91-P-1496. March 16, 1993. *Search and Seizure*, Threshold police inquiry. *Constitutional Law*, Search and seizure, Self-incrimination. *Witness*, Self-incrimination. *Waiver. Practice, Criminal*, Continuance.

A Superior Court jury found the defendant, Holmes, guilty of the crimes of unlawfully carrying a firearm (a PMK .380 caliber handgun), possession of ammunition without a license (8 rounds chambered within the pistol), and assault and battery on a police officer; all offenses alleged to have been committed immediately after an automobile stop in Boston. The appeal is from the conviction of unlawfully carrying a firearm.

1. At a pretrial hearing the defendant sought suppression of the loaded pistol found on his person on the grounds that his rights under the Fourth Amendment to the United States Constitution and art. 14 of the Declaration of Rights of the Massachusetts Constitution were violated. We take the facts relevant to that issue from the judge's findings. Uniformed police officers Robert McClain and Fermin Cardona, traveling in a marked patrol wagon at about 6:15 P.M. stopped a 1989 Volkswagen sedan operated by Kimberly Lang. Their purpose was to return a New Hampshire registration certificate which they had earlier neglected to give back to her after a routine traffic stop. Approaching the Volkswagen on foot, the two officers noticed the defendant seated in the front passenger seat. As Cardona — stationed on the driver's side — was handing the certificate to Lang, McClain, who stood next to the passenger door, kept watch over the defendant.

The defendant leaned over toward the driver's side to converse with Cardona who engaged him in a brief inquiry about a previous citation he had issued to him for operating a motor scooter without a license. From his vantage point, McClain then noticed a bulge in the defendant's right hand pocket which seemed shaped like a pistol. McClain asked the defendant to step out of the vehicle, and then held onto the car door so as to be positioned to pin the defendant against the car itself. Suddenly the defendant slammed open the door, knocking McClain to the pavement, and fled down the street. Officer Cardona gave chase and in a few minutes the defendant was apprehended with the assistance of another officer responding to the scene. Cardona and the other officer handcuffed the defendant — still unaware at this point that the defendant had a concealed weapon in his pocket. A pat-down frisk conducted moments later revealed the revolver.

The judge's findings eliminate motor vehicle violations and car theft as a basis for the stop. Cf. *Commonwealth* v. *Cavanaugh*, 366 Mass. 277, 278 (1974) (traffic offenses); *Commonwealth* v. *Ling*, 370 Mass. 238, 240-241 (1976) (car theft). Furthermore, he found that the second stop of Lang's vehicle was unnecessary and a pretext "since they could have mailed the certificate back to [her] and avoided the intrusion entirely." Regardless of whether the officer's decision to return Lang's license upon the second sighting of the vehicle was a pretext, and may not have justified a pat-down of the defendant under *Terry* v. *Ohio*, 392 U.S. 1, 21-22 (1968), we agree with the judge's conclusion that the defendant's sudden flight and assault and battery on Officer McClain gave rise to an independent justifi-

cation for their pursuit. It created a completely new situation so attenuated from the initial encounter as to dissipate wholly whatever initial taint one might read into the officer's curiosity about the defendant. *Commonwealth v. Saia*, 372 Mass. 53 (1977). *Commonwealth v. King*, 389 Mass. 233 (1983). *Commonwealth v. Frodyma*, 393 Mass. 438 (1984).

Observation of the bulge in the defendant's pocket was the only possible source of reasonable suspicion of the defendant, and this, of course, occurred after the stop of the vehicle. The officers had no other information about the defendant's background which justified the intrusion. Compare *Commonwealth v. Ballou*, 350 Mass. 751, 754-55 (1966) (no bulge but the defendant had reputation known to officers for carrying guns). While the circumstances at that point did not warrant an initial pat-down of the defendant, his subsequent flight may be considered as a factor in evaluating the officer's articulable suspicion because "the defendant broke away from the police before they pursued him." *Commonwealth v. Marrero*, 33 Mass. App. Ct. 440, 444 (1992), quoting from *Commonwealth v. Sanchez*, 403 Mass. 640, 646 (1988). Even if McClain's observation of the defendant could not support a reasonable suspicion that the defendant concealed a weapon *before* the second stop of the Lang vehicle, the defendant's flight coupled with McClain's observation of the odd bulge in his pocket, provided an independent basis for the postarrest pat-down search of the defendant. *Commonwealth v. Frodyma*, 393 Mass. at 441.

2. In the midst of Lang's direct testimony at the suppression hearing offered in support of the defendant's very different version of the events described by the police, the prosecutor suggested to the judge that Lang be advised of her right under the Fifth Amendment to the United States Constitution not to incriminate herself. The judge recessed the hearing and appointed counsel to advise her of her rights. Shortly thereafter she declined to testify any further and her previous testimony was struck — the judge preserving the defendant's right to appeal this ruling.

What the defendant claims on appeal is that Lang's testimony was so crucial to a favorable outcome on the suppression motion that his defense to the "carrying" charge was destroyed. Lang testified before the interruption that the officers mistakenly insisted that the defendant was someone else (for whom they had outstanding arrest warrants) and asked him to step out for identification. The defendant complied and an initial frisk occurred which did not reveal any concealed weapon. According to Lang, when the officers were about to frisk him again, "he ran." Even if her testimony were fully credited, it is unlikely that the judge's ruling on the suppression motion would have been altered. See *Commonwealth v. Sanchez*, 403 Mass. at 646 (defendant's flight, after consenting to a police search, provided the officers with enough suspicion to pursue him).

It is clear from the record that Lang testified without being aware of her Fifth Amendment rights and, once apprised by counsel of the risks inherent in proceeding further, her choice not to continue was unequivocal. See

*Taylor* v. *Commonwealth*, 369 Mass. 183 (1975); *Commonwealth* v. *Funches*, 379 Mass. 283 (1979); *Commonwealth* v. *Weed*, 17 Mass. App. Ct. 463 (1984) (a witness must testify freely and voluntarily and may not be ignorant, misinformed or confused about her rights).

Lastly, Lang's willingness at the outset to testify for the defendant cannot be construed as a waiver of her right to invoke Fifth Amendment protection because, unlike the situation described in the principal case which the defendant marshals for support, *Matter of DeSaulnier (No. 2)*, 360 Mass. 761, 766 (1971), Lang, at the outset, was not represented by counsel and was ignorant of her rights prior to the judge's warning. Under these circumstances, it is evident that her testimony — which might have led to her being charged with a crime — was not so "freely or voluntarily" given as to constitute a waiver. *Taylor* v. *Commonwealth*, 369 Mass. at 190.

3. Defense counsel, on the day the case was called for trial, requested a continuance on the ground that he had just discovered that Lang (and other occupants of the vehicle at the time of the second stop by the police) had gone to Florida and were not expected to return for nine days. After determining that the case had been continued at least once before at the defendant's request and that the Commonwealth was ready for trial, the judge declined the request.

It is well settled that the question whether to grant a request for a continuance rests within the sound discretion of the trial judge. *Commonwealth* v. *Cavanaugh*, 371 Mass. 46, 50-51 (1976); *Commonwealth* v. *Mamay*, 407 Mass. 412, 419 (1990). Here there was no patent abuse of that discretion. See *Commonwealth* v. *Gilchrest*, 364 Mass. 272, 276 (1973). Defense counsel mused before the judge, that with the passage of time Lang would likely testify as a defense witness. Yet defense counsel provided no affidavit of Lang or other supporting information to the judge to confirm that she had changed her mind. There was no abuse of discretion. See *Commonwealth* v. *Small*, 10 Mass. App. Ct. 606, 609 (1980) (no abuse of discretion was shown by the judge's denial of the defendant's motion for a continuance made the day before trial was to commence, in order to prepare his case as a result of learning earlier of a witness's retracted testimony); *Commonwealth* v. *Perry*, 6 Mass. App. Ct. 531, 540-541 (1978) (speculation concerning possible testimony of two potential witnesses unpersuasive).

*Judgment affirmed.*

*John T. Burns* for the defendant.
*David B. Mark*, Assistant District Attorney, for the Commonwealth.