NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-1953                                        Appeals Court


COMMONWEALTH  vs.  STEPHEN LUNDEN.


No. 13-P-1953.

Middlesex.     February 3, 2015. - August 10, 2015.

Present:  Cypher, Hanlon, & Agnes, JJ.


Practice, Criminal, Collateral estoppel.  Collateral Estoppel.
    Search and Seizure, Fruits of illegal arrest.
    Constitutional Law, Search and seizure.  Evidence,
    Scientific test.  Deoxyribonucleic Acid.


    Indictments found and returned in the Superior Court
Department on September 23, 2010.

    A pretrial motion to suppress evidence was heard by Gary V.
Inge, J., and a motion for reconsideration was considered by
him.

    An application for leave to prosecute an interlocutory
appeal was allowed by Margot Botsford, J., in the Supreme
Judicial Court for the county of Suffolk, and the appeal was
reported by her to the Appeals Court.


    Jamie Michael Charles, Assistant District Attorney, for the
Commonwealth.
    Matthew Harper-Nixon for the defendant.


    AGNES, J.  The defendant is charged in a seven count

indictment that includes drug offenses and multiple charges of

breaking and entering in the nighttime with the intent to commit a felony.  The principal question raised by the Commonwealth's interlocutory appeal is whether, as determined by the motion judge, the deoxyribonucleic acid (DNA) evidence that the Commonwealth proposes to offer against the defendant, which is derived from a 2007 blood sample from the defendant, must be suppressed as the "fruit of the poisonous tree," namely, the blood sample seized unlawfully from the defendant in 2000.  See Commonwealth v. Benoit, 382 Mass. 210, 214-216 (1981).[1]

The essential facts are not in dispute.  At the time the first blood sample was seized in September, 2000, the defendant was serving a State prison sentence for two counts of violation of civil rights with injury as a result of a 1998 conviction. At that time, G. L. c. 22E, § 3, listed thirty-three specific offenses for which a DNA sample from a convicted person then serving a sentence could be obtained.  Violation of civil rights with injury was not one of the listed offenses, and thus the seizure of the defendant's blood in 2000 was unlawful.  However, three years later, the Legislature amended the statute, effective February 10, 2004, and made it applicable to "[a]ny person who is convicted of an offense that is punishable by

---

[1] The evidence was seized to permit the Commonwealth to create a DNA record so that the defendant would be included in the State's DNA database established by G. L. c. 22E, § 2, inserted by St. 1997, c. 106, § 7.

imprisonment in the state prison."  G. L. c. 22E, § 3, as amended by St. 2003, c. 107, § 1.  In that amendment the Legislature also provided that the obligation to provide a DNA sample applied to persons who then were on probation following a conviction for a felony offense.[2]  The defendant was included in that group because by February, 2004, although he had completed service of his sentence for the civil rights violations, he was on probation for a separate offense of unarmed robbery.[3]  The defendant was again convicted of felony offenses in August, 2005, and September, 2005, as a result of which he was once again incarcerated in State prison.  Under G. L. c. 22E, the defendant was required to supply a DNA sample, but the Commonwealth again did not seize his blood because his DNA

---

[2] Statute 2003, c. 107, § 2, provides in part that "[a]ny person currently on probation or parole as a result of such conviction, adjudication or other judicial determination, notwithstanding the date of such conviction, adjudication or judicial determination, who has not previously submitted a DNA sample to the department [of State police] under said chapter 22E, shall submit a DNA sample to the department within 1 year after the effective date of this act."

[3] In 1998, the defendant was convicted of one count of unarmed robbery in violation of G. L. c. 265, § 19(b), two counts of violation of civil rights with injury in violation of G. L. c. 265, § 37, and two counts of assault and battery for purposes of intimidation with injury in violation of G. L. c. 265, § 39(b).  The defendant was sentenced to four to six years in State prison on the civil rights convictions and to a ninety-month term of probation on the unarmed robbery conviction to run concurrently with the State prison sentence for the civil rights violations.

record was already in the State DNA database as a result of the Commonwealth's earlier seizure of a blood sample in 2000.[4]

The issue before us arose on February 17, 2006, when police learned that deposits of DNA on physical evidence from a series of unsolved burglaries in Bristol and Middlesex Counties matched the DNA record belonging to the defendant that was stored in the Combined DNA Index System (CODIS), the national DNA database.[5] In June, 2007, while the defendant was in custody being held on bail for those crimes, the Commonwealth obtained fresh samples of the defendant's blood and produced a DNA profile that resulted in a second CODIS "hit" confirming the 2006 CODIS "hit."  The Commonwealth wants to use the 2007 DNA evidence against the defendant at his pending trial in Superior Court in Middlesex County.  See Commonwealth v. Guy, 454 Mass. 440, 447

---

[4] It is the policy of the Department of Correction not to take multiple samples of DNA from individuals out of a concern for the risk of infection.

[5] "Authorized by Congress and supervised by the Federal Bureau of Investigation, the Combined DNA Index System (CODIS) connects DNA laboratories at the local, state, and national level.  Since its authorization in 1994, the CODIS system has grown to include all 50 States and a number of federal agencies. CODIS collects DNA profiles provided by local laboratories taken from arrestees, convicted offenders, and forensic evidence found at crime scenes.  To participate in CODIS, a local laboratory must sign a memorandum of understanding agreeing to adhere to quality standards and submit to audits to evaluate compliance with the federal standards for scientifically rigorous DNA testing."  Maryland v. King, 133 S. Ct. 1958, 1968 (2013).  See Landry v. Attorney Gen., 429 Mass. 336, 339 (1999), cert. denied, 528 U.S. 1073 (2000).

(2009).  As to those charges, the defendant filed a motion to suppress the 2007 DNA evidence, arguing that the 2006 CODIS hit and the resulting incarceration that led to the 2007 blood sample were the result of the unlawful seizure of his blood in 2000.  The motion was eventually allowed.

Discussion.  1.  Collateral estoppel.  The Commonwealth argues that because in January, 2008, the defendant pleaded guilty to a breaking and entering charge in Bristol County that also resulted from the 2006 CODIS hit that made use of the evidence seized unlawfully by the Commonwealth in 2000, and he did not move to suppress the evidence in that case, the collateral estoppel doctrine bars him from raising the issue in his pending Middlesex County prosecution.  See Commonwealth v. Lopez, 383 Mass. 497, 499 (1981); Commonwealth v. Cabrera, 449 Mass. 825, 829 (2007).

In Commonwealth v. Ringuette, 60 Mass. App. Ct. 351, 357, S.C., 443 Mass. 1003 (2004), we identified the five requirements that must be met in order for collateral estoppel to apply: "(1) the issues in the two proceedings must be the same; (2) the defendant must have had sufficient incentive to have vigorously and thoroughly litigated the issue in the previous proceeding; (3) the defendant estopped must have been a party to the previous litigation; (4) the applicable law must be identical in both proceedings; and (5) the first proceeding must have

resulted in a final judgment on the merits such that the defendant was provided with sufficient incentive and an opportunity to appeal."  In the Bristol case, the defendant did not move to suppress the blood evidence match, and therefore despite the defendant's conviction the Bristol proceeding did not result in a final judgment on the merits regarding the fruit of the poisonous tree argument.  See Bay State Gas Co. v. Department of Pub. Util., 459 Mass. 807, 817 n.20 (2011).  The burden of showing that the circumstances for collateral estoppel are met falls on the Commonwealth as the moving party, see Kimbroughtillery v. Commonwealth, 471 Mass. 507, 511 (2015), and they have not met that burden.  See Lopez, supra.

2.  Fruit of the poisonous tree.  Despite the fact that the 2007 blood sample from which the present DNA evidence is derived was obtained as a result of the blood sample seized unlawfully from the defendant in 2000, we agree with the Commonwealth's argument that the exclusionary rule is not applicable and that it was error for the judge to suppress the evidence.  Under the "fruit of the poisonous tree" doctrine enunciated in Wong Sun v. United States, 371 U.S. 471, 487-488 (1963), evidence must be suppressed in circumstances in which it is deemed to have been tainted by a prior search or seizure that was unlawful.  See Commonwealth v. Damiano, 444 Mass. 444, 453-454 (2005).  It is not a "but for" rule.  Id. at 453.  Instead, the question

becomes "whether . . . the evidence . . . has been come at by exploitation of [that] illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Wong Sun v. United States, supra at 488. Commonwealth v. Bradshaw, 385 Mass. 244, 258 (1982). "To determine 'whether the connection between the evidence and the improper conduct has become so attenuated as to dissipate the taint, the facts of each case must be examined in light of three factors:  the temporal proximity of the arrest to the obtaining of the evidence; the presence of intervening circumstances; and the purpose and flagrancy of the misconduct.'" Commonwealth v. Manning, 44 Mass. App. Ct. 695, 698 (1998), quoting from Commonwealth v. Fredette, 396 Mass. 455, 460 (1985).  See Commonwealth v. Sylvia, 380 Mass. 180, 183-184 (1980).  "In this sense, the attenuation rule is 'not an exception to the exclusionary rule but a test of its limits.'"  Damiano, supra at 454.  The Commonwealth has the burden of establishing that the attenuation rule is applicable.  Fredette, supra at 459.

In the present case, the presence of intervening circumstances warrants application of the attenuation rule. There were at least three other times since 2000, especially after G. L. c. 22E, § 3, was amended in 2003, that the defendant was required to supply a DNA sample or Massachusetts law enforcement authorities were required to obtain DNA evidence

from the defendant.  The record indicates that the Department of Correction would have lawfully seized a blood sample from the defendant in 2005 (a year before the first CODIS hit) if it did not already have the defendant's DNA record in the State DNA database.  Given the significant changes in the law since G. L. c. 22E was first adopted, and the passage of time between the unlawful seizure in 2000 and the initial CODIS hit in 2006, "the connection between the improper conduct and the derivative evidence has become so attenuated as to dissipate the taint." Fredette, supra at 459.  There is no evidence in the record before us of purposeful misconduct on the part of law enforcement.[6]

The primary purpose of the exclusionary rule is to deter unlawful conduct by law enforcement authorities.  Commonwealth v. Maingrette, 86 Mass. App. Ct. 691, 697 (2014). Applying the exclusionary rule in a case such as this would not serve that

---

[6] It should be noted that when G. L. c. 22E was adopted in 1997, the Legislature included a statement of broad public policy underlying the new law:  "It shall be the policy of the commonwealth to assist local, state and federal criminal justice and law enforcement agencies in:  (1) deterring and discovering crimes and recidivistic criminal activity; (2) identifying individuals for, and excluding individuals from, criminal investigation or prosecution; and (3) searching for missing persons.  Said policy shall be served by establishing facilities for comparing biological evidence recovered during criminal investigations with biological material obtained from offenders convicted of crimes in the commonwealth."  St. 1997, c. 106, § 1.

purpose.  See Commonwealth v. Sheppard, 394 Mass. 381, 389-391 (1985).

Conclusion.  For the reasons set forth above, we reverse the order allowing the defendant's motion to suppress.

So ordered.