Toomey, J.
BACKGROUND
Defendants have moved for a pre-trial resolution of the question of whether or not a prospective witness will be permitted to resist testifying by invoking her privilege against self-incrimination. Ordinarily, the Court is not inclined to entertain that question in a pre-trial context, Luna v. Superior Court, 407 Mass. 747, 749 n.2 (1990), but, in view of the apparent rigidity of the witness’s determination not to testify, her relatively tender years and the impact that the disposition of this motion will likely have on the litigation to come, the Court will indulge a pre-trial assessment of the Fifth Amendment issue.
Defendants claim that the witness’s testimony at the grand jury proceedings that indicted defendants did not tend to incriminate her. Furthermore, they contend that, even if self-incriminating, her testimony was not voluntary because she was misinformed that the inquiry would not touch on matters that might incriminate her. Therefore, defendants argue, her grand jury testimony cannot be deemed a waiver of her privilege against self-incrimination. In the alternative, defendants maintain that, assuming arguendo a waiver by reason of the grand jury testimony, that waiver does not survive into the trial proceedings and, accordingly, the witness’s trial assertion of privilege is not eroded by reason of the prior waiver.
The Commonwealth’s position is, not unexpectedly, to the contrary. It suggests that the witness’s grand jury testimony was self-incriminating and voluntary. Therefore, the Commonwealth views the grand jury testimony as a waiver of privilege, the burdens of which travel with the witness to the trial proceedings. The Commonwealth concludes that the waiver will operate to bar the witness’s assertion of the privilege at trial.
For the reasons stated infra, the Court has determined that the Commonwealth has the better of the debate.
FACTS
Based upon the testimony and exhibits received at the hearing upon the instant motion, I make the following findings of fact.
1. On March 29, 1994, the witness rode in a motor vehicle with defendants and the driver to and from the scene of an armed robbery. She moved from the back to the front seat of the vehicle while the two were accomplishing the robbery and was present during their discussions, both before and after the robbery, *512 with respect to their doings in connection with the robbery. She was present as the two displayed an ammunition clip, money (“ones and fives”) and cigars, the latter two items having been obtained from the store at which the robbeiy occurred. The witness parted company with the defendants at the apartment of the driver of the vehicle.
2. On March 31, 1994, the witness was interviewed by the police and, having been advised of her various rights, admitted the matters recited in paragraph 1, supra.
3. On July 7, 1994, after consultation with counsel, [1] the witness asserted her privilege against self-incrimination and refused to testify at the District Court probable cause hearing for defendants. Counsel for the witness was not present at the hearing.
4. Thereafter, the witness’s counsel engaged in discussions with representatives of the local District Attorney’s office. Those representatives assured counsel that, if the witness were to testify before the grand jury then considering a presentment against the defendants in connection with the alleged robbeiy, the witness’s testimony would be limited to the matters contained in her March 31, 1994 statement to the police.
5. In advance of her appearance before the grand jury, counsel apprised the witness of the contents of his discussion with the District Attorney’s representatives and explained her various rights. He informed her of her privilege against self-incrimination in connection with the grand jury proceedings to come and added that anything she said could be used against her in subsequent proceedings. He was aware that the witness had, at the July 7, 1994, probable cause hearing, asserted the privilege. Counsel advised her that, if she elected to forego the privilege and testify before the grand jury, she ought to prepare therefor by re-reading her March 31, 1994, statement to the police. He also reviewed for the witness certain grand juiy protocols, viz, the freedom from cross-examination and the absence of the defendants.[2]
6. At the time the witness appeared before the grand jury, the delinquency complaints, mentioned in fn. 1, supra, were pending against her in the local juvenile court.
7. On July 18, 1994, counsel was present with the witness during her grand jury testimony. The witness did not assert her privilege and her testimony, in the main, recited the events recorded in paragraph 1, supra.[3]
8. The witness’s date of birth is January 5, 1979. Her demeanor and testimony at the hearing on the motion enabled this Court to conclude that she was mature, articulate, appropriately knowledgeable, aware of the gravity of the proceedings, unintimidated by the process and, above all, “street-smart.” Her insistence that she will assert her privilege if called to testify at trial is firm and renders appropriate the pre-trial attention now given to defendants’ motion.
DISCUSSION
We begin with the proposition that, in order to constitute a valid and continuing waiver, by testimony, of privilege, the testimony must be self-incriminating, voluntary and offered in an ancestral proceeding. The analytical progression, therefore, will be from an assessment of the earlier testimony as to its character and then to an evaluation of the prospective testimony as to its kinship with the earlier testimony. See, generally, Liacos, Handbook of Massachusetts Evidence, §13.13.5 (6th ed.).
The law does not require, for a conclusion that testimony is self-incriminating, that the testimony be sufficient in and of itself to warrant a conviction of the witness; it is enough if the testimony furnishes a “link in the chain of evidence needed to prosecute the claimant [of the privilege].” Commonwealth v. Borans, 388 Mass. 453, 456-57 (1983). Thus, that the testimony does not provide all the elements required for conviction is insignificant. Any degree of incrimination brings into play the privilege. Malloy v. Hogan, 378 US1, 11-12 (1964); Commonwealth v. Voisine, 414 Mass. 772, 784-85 (1993); cf Miranda v. Arizona, 384 U.S. 436, 476 (1966).
At bar, the witness’s grand jury testimony did indeed provide at least a link, if not more, in the chain of prospective prosecutorial evidence against her. She admitted to hearing the defendants discuss the robbery both before and after its occurrence. She admitted to being present in the get-away vehicle before, during and after the robbeiy. She admitted to shifting her location in the vehicle as defendants returned from the robbeiy thus permitting an inference that she facilitated the escape. She admitted to observing the ammunition clip and the fruits of the robbery in the get-away vehicle.[4] This Court concludes that those admissions would forge a helpful link for the prosecution (compare Commonwealth v. Funches, 379 Mass. 283, 291 (1979), and accordingly, the grand juiy testimony of the witness may properly be identified as self-incriminating. Taylor v. Commonwealth, 369 Mass. 183, 189 (1975).
With respect to the matter of voluntariness, we may recall that, at the time of her testimony, the witness was more than fifteen and one half years of age and possessed of the maturity, self-possession and practical wisdom of one much older. She was under no misconceptions of her right to withhold her cooperation from the grand juiy. On March 31, 1994, having been advised of her Miranda rights, she offered a statement to the police. On July 7, 1994, having been advised by counsel, she declined to present testimony at the probable cause hearing. Therefore, her grand jury testimony can hardly now be said to have been compelled by the belief that she had no choice but to testify.
Furthermore, she had the support of counsel at her grand juiy appearance. That counsel was not unfamiliar to her, having represented her in earlier CHINS and *513 delinquency matters and, most significantly, having advised her during the probable cause phase at which she declined to testify. Prior to her grandjury testimony, he informed her with respect to her privilege not to testify and the consequences of testifying. Although she may not have employed the term “waiver” to describe the effect of testifying before the grand juiy, the functional equivalent thereof was surely conveyed to the witness when he advised her that anything she said to the grand juiy might be used against her in subsequent proceedings.
That the witness and her counsel relied on the prosecutor’s assurance that the grand jury’s questions would not travel beyond the subject matter of her March 31, 1994 statement does not demonstrate any involuntariness inher grandjury testimony. The questions indeed were limited as promised and were not the occasion for misperception by the witness.[5] Her election to testify was neither coerced nor unwilling. It was voluntary in all material respects. Compare, Taylor v. Commonwealth, 369 Mass. 183, 190-93 (1975), Commonwealth v. Holmes, 34 Mass.App.Ct. 916, 919 (1993).
By reason of its self-incriminating nature and its voluntary quality, we may properly conclude that the witness’s grand jury testimony was a waiver of her privilege. What remains now is a determination of whether or not that waiver possesses viability beyond the grand juiy stage to the end that the waiver bars assertion of the privilege at trial.
The general rule that “waiver by testimony. . . does not extend to subsequent proceedings,” Commonwealth v. Borons, 388 Mass. 453, 457 (1983); accord, Palaza v. Superior Court, 393 Mass. 1001 (1984), has been glossed by later decisions of our appellate courts to the effect that a waiver by testimony does extend to certain descendant proceedings. In Luna v. Superior Court, 407 Mass. 747, 750-751 (1990), the Supreme Judicial Court held that a witness’s voluntary, informed and counselled submission of an affidavit in connection with the reinstatement of an indictment, earlier dismissed, constituted a waiver of the witness’s privilege at trial of the revived indictment. Similarly, in Commonwealthv. Penta, 32 Mass.App.Ct. 36, 45-46 (1992), the Appeals Court ruled that the witness’s voluntary, informed and counselled testimony at a pre-trial hearing on a motion to suppress upon the indictment of another operated as a waiver of the witness’s privilege at the later trial of that other.
The message to be derived from Luna and Penta is that, while the general rule of Borons — to wit, a waiver by testimony is ineffective in a “subsequent proceeding” — is still good law, the concept of “subsequent proceeding” is not to be read as describing a proceeding that bears a logical relation with the occasion of the prior testimony. For example, Penta instructs that, if the later proceeding is “merely a continuation” of the earlier proceeding, it is not a “subsequent proceeding” as to which Borans would purge the waiver by testimony. Commonwealth v. Penta, supra, at 45. And, we know from Luna’s resuscitation of Matter of DeSaulnier (No. 2), 360 Mass. 761 (1971) — consigned to apremature grave by Palaza v. Superior Court, supra, at 1002 — that, if the trial is “a continuation of the same criminal proceeding,” the waiver by testimony continues through that later trial. Luna v. Superior Court, supra, at 750-51. DeSaulnier (No. 2), thus revived, adds its voice to the Luna/Penta chorus: a waiver by testimony will operate in a subsequent proceeding which is “a probable, logical or natural continuation or outgrowth of the proceeding ... in which prior testimony has been given by the witness.” DeSaulnier (No. 2), supra, at 766.
At bar, the trial of defendants is indeed a “continuation” of the grand juiy proceedings at which the witness testified and after which the indictments of defendants were returned. The trial is plainly a “probable, logical or natural . . . outgrowth” of that grand juiy proceeding. The waiver by grand juiy testimony is, accordingly, operative in the trial that flows, in the usual course, from the grand jury proceeding.
CONCLUSION
The grand jury testimony was self-incriminating and voluntary. It constituted a waiver by testimony of the witness’s privilege against self-incrimination. Because the trial of defendants is a continuation or outgrowth of the grand jury proceedings at which defendants were indicted, the witness’s waiver before the grand juiy will be fully effective at trial. The motion for pre-trial determination of the witness’s right to assert her privilege at trial is ALLOWED and, by reason of waiver, the witness will not be permitted so to assert.

Counsel for the witness had also represented her in a CHINS matter in October, 1993, and had commenced representing her in the delinquency proceedings, arising out of the instant episode, in April, 1994. The delinquency complaints accuse the witness of being an accessoiy before the fact of armed robbery, an accessory after the fact of armed robbery and receiving stolen property. At this writing, those delinquency complaints have not been resolved.

Nhe counsel did not expressly advise the witness that her grandjury testimony might be viewed as a waiver of her privilege against self-incrimination in later proceedings, but he did, as noted supra, inform her of the cognate proposition that her testimony might be used against her in later proceedings.

A transcript of her testimony was offered at the hearing upon the motion and was received as Exhibit 1. The March 31, 1994, statement was not offered, but counsel for the witness testified that its contents were the same as the testimony she delivered before the grand jury.

Although the witness sought to minimize the import of her admissions, the crucial fact is that she did utter them and a future finder of fact might well be disinclined to paint them with the same patina of detachment that the witness employed in the testimony.

Although counsel may have miscalculated and judged that the witness’s statement and, perforce, her grand jury testimony were not self-incriminating, his error does not erode the voluntariness of the witness’s decision to testify before the grand juiy. There is no evidence that counsel advised the witness that she had to testify because she had no privilege to resist testimony that was not self-incriminat *514 ing. In fact, his advice that, if she testified, she ought to prepare by reading her statement, suggests that he conveyed that she might choose not to testify. In sum, this Court concludes that, at most, counsel’s advice informed the witness that her culpability would not be established by her testimony and that the choice to testify or not was hers to make. That the advice may, in retrospect, have been unsound, does not render the exercise of the choice involuntary.