COMMONWEALTH *vs.* ANTHONY SMITH.

Essex. September 15, 1992. - March 3, 1993.

Present: LIACOS, C.J., WILKINS, ABRAMS, O'CONNOR, & GREANEY, JJ.

*Grand Jury. Rules of Criminal Procedure. Practice, Criminal,* Grand jury proceedings. *Due Process of Law,* Grand jury proceedings, Identification. *Identification. Evidence,* Identification, Photograph.

Rule 5 (g) of the Massachusetts Rules of Criminal Procedure, which permits a prosecutor's presence at a grand jury's deliberations pursuant to the grand jury's request, to assist the grand jury with respect to questions they may have had concerning the law, violates neither the due process clause of the Fourteenth Amendment to the United States Constitution nor art. 12 of the Declaration of Rights of the Massachusetts Constitution. [438-441]

There was no error in the denial of a defendant's pretrial motion to suppress either with regard to a victim's out-of-court selection of the defendant's photograph (the only photograph absent from an initial array of 300 photographs but included in subsequent smaller arrays drawn from the initial array), or her subsequent photographic and in-court identifications of the defendant where the defendant failed to show, by a preponderance of the evidence, that, considering the totality of the circumstances attending the particular identification, the victim was subjected by the State to an identification procedure so unnecessarily suggestive and conducive to irreparable misidentification as to deny the defendant due process of law. [441-443]

INDICTMENTS found and returned in the Superior Court Department on December 20, 1989.

A pretrial motion to dismiss was heard by *David M. Roseman,* J.; a pretrial motion to suppress evidence was heard by *Charles M. Grabau,* J., and the case was tried before him.

The Supreme Judicial Court granted a request for direct appellate review.

*Willie J. Davis* (*Marie Elena Saccoccio* with him) for the defendant.

*Margaret J. Perry*, Assistant District Attorney, for the Commonwealth.

O'CONNOR, J. This appeal presents Federal and State constitutional challenges to Mass. R. Crim. P. 5 (g), 378 Mass. 850 (1979), which provides with respect to grand jury proceedings that "[t]he prosecuting attorney shall not be present during deliberation and voting *except at the request of the grand jury*" (emphasis added). The defendant, who was convicted of assault and battery and unarmed robbery after a trial by jury, contends that his constitutional rights were violated by the presence of the prosecutor during the deliberations of the grand jury that indicted him. The defendant says that his motion to dismiss the indictments on that ground was improperly denied. The defendant also presents the question whether a judge erred in denying his motion to suppress out-of-court and in-court identifications of him. We granted the defendant's request for direct appellate review. We now affirm the convictions.

It is clear that, in the prosecutor's presence, at least a majority of the grand jury voted to request the prosecutor to remain in the grand jury room during their deliberations, and that he did so. The defendant argues that "the Due Process Clause of the Fourteenth Amendment applies to Mass. R. Crim. P. 5 (g); that the presence of the prosecutor during grand jury deliberations and voting results in presumed prejudice to the defendant; that this is fundamental error which strikes at the very heart of grand jury independence; and, as such, violates the Due Process Clause." The defendant cites no case, and we are aware of none, in which the Supreme Court or any other court has held that the presence of the prosecutor at grand jury deliberations, pursuant to the grand jury's request, violates due process. It is true, as the defendant points out, that Fed. R. Crim. P. 6 (d) (1992), provides that "no person other than the jurors may be present while the grand jury is deliberating or voting," but, to our knowledge, no court has held that that rule is derived

from the United States Constitution. On the contrary, the Supreme Court has characterized Fed. R. Crim. P. 6 (d) as a " 'procedural rule[ ] not specifically required by the Constitution or the Congress,' *United States* v. *Hasting*, 461 U.S. 499, 505 [1983]." *United States* v. *Williams*, 112 S. Ct. 1735, 1741 & n.6 (1992). While rule 6 (d) was surely designed to promote "the integrity of the grand jury's functions," *id.* at 1741, it does not follow that a different rule, such as Mass. R. Crim. P. 5 (g), which also is designed to promote the integrity of the grand jury process, is fundamentally unfair and violative of due process. In our view, permitting the prosecutor's presence at grand jury deliberations pursuant to the grand jury's request, to assist the grand jury with respect to questions they may have concerning the law, does not compromise the independence of the grand jury. The grand jury's independence is not impaired because the prosecutor "cannot [otherwise] participate in the deliberations or express opinions on questions of fact or attempt in any way to influence the action." *Attorney Gen.* v. *Pelletier*, 240 Mass. 264, 310 (1922).

The defendant argues here that rule 5 (g) violates the due process clause of the Fourteenth Amendment to the United States Constitution, but also that it violates art. 12 of the Declaration of Rights of the Massachusetts Constitution. Article 12 provides in pertinent part that "no subject shall be arrested, imprisoned . . . or deprived of his life, liberty, or estate but by the judgment of his peers, or the law of the land." The defendant's first argument is that, because rule 5 (g) violates the Fourteenth Amendment, "a fortiori," it violates the "law of the land," and therefore art. 12. That argument fails in view of our determination that rule 5 (g) does not violate the Fourteenth Amendment. Quoting from *Jones* v. *Robbins*, 8 Gray 329 (1857), the defendant also argues that the "law of the land" within the meaning of art. 12, refers to "the ancient established law and course of legal proceedings, by an adherence to which our ancestors in England, before the settlement of this country, and the emigrants themselves and their descendants, had found safety for their

personal rights." *Id.* at 343. The defendant then asserts that, "[a]s to the particular mode of procedure in England and the Bay Colony . . . there simply was no authority for the prosecutor's presence during grand jury deliberations and voting under either system," and therefore a prosecutor's presence during grand jury deliberations violates the law of the land and art. 12.

In answering the question whether a statute that would authorize the presence of counsel for a witness at grand jury proceedings would violate art. 12, the Justices of this court said, "[i]n considering this issue, we do well to recall, as Chief Justice Shaw indicated in [*Jones* v. *Robbins, supra* at 340], and as the court has since maintained, that the Constitution does not freeze beyond legislative change the details of grand jury proceedings as known in the Eighteenth Century, but rather preserves the essence of the institution as it functions in a contemporary setting. See *Commonwealth* v. *Jordan,* 207 Mass. 259 (1911). Cf. *Opinions of the Justices,* 360 Mass. 877, 885 (1971) (trial jury of six). Thus grand jury procedures have been altered in various respects over the years without offense to art. 12." *Opinion of the Justices,* 373 Mass. 915, 918 (1977). "Mere rules of procedure practised by our ancestors at the time of the adoption of the Constitution did not become an inherent part of due process [or the 'law of the land' as referenced in art. 12]." *Opinion of the Justices,* 232 Mass. 601, 604 (1919).

As we said in response to the defendant's due process argument, permitting the prosecutor to be present during deliberations by request in order to respond to grand jurors' questions about the law does not, in our view, conflict with the essence of grand jury procedure as practiced in England and the Bay Colony before the adoption of the Massachusetts Constitution in 1780. We have said as much in prior cases. For example, in *Commonwealth* v. *Kozlowsky,* 238 Mass. 379, 390 (1921), we held, "[t]he power of the Attorney General under the present state of the law enabled him personally or by his assistant to be present with the grand jury in its deliberations." In *Attorney Gen.* v. *Pelletier,* 240 Mass.

264, 309-310 (1922), the court said, "It was said by Mr. Justice Field, in an oft quoted charge to a grand jury, 2 Sawyer, 667, 678: 'The district attorney has the right to be present at the taking of testimony before you for the purpose of giving information or advice touching any matter cognizable by you, and may interrogate witnesses before you, but he has no right to be present pending your deliberations on the evidence. When your vote is taken upon the question whether an indictment shall be found or a presentment made, no person besides yourselves should be present.' The rule in this Commonwealth is not quite so strict. While the prosecuting officer has no right to stay with the grand jury during their deliberations and must withdraw on their request, nevertheless he may remain by their permission and his presence does not invalidate their proceedings. But he must keep silent unless his advice or opinion is sought. He cannot participate in the deliberations or express opinions on questions of fact or attempt in any way to influence the action. His duty is ended when he has laid before the grand jury the evidence and explained the meaning of the law." See *Commonwealth* v. *Beneficial Fin. Co.*, 360 Mass. 188, 208 (1971), cert. denied sub nom. *Farrell* v. *Massachusetts*, 407 U.S. 910, and sub nom. *Beneficial Fin. Co.* v. *Massachusetts*, 407 U.S. 914 (1972) ("The test we stated in *Commonwealth* v. *Favulli*, 352 Mass. 95 [1967] . . . regarding the circumstances under which multiple prosecutors may properly be present before the grand jury applies equally to presence at the voting stage as to presence during presentation of the evidence and deliberations").

We turn to the question whether the defendant was entitled to suppression of out-of-court and in-court identifications of him. The defendant contends that photographic identification procedures used by the Lynn police were impermissibly suggestive and that the in-court identification by the defendant's alleged victim was tainted thereby. The judge who heard the suppression motion found the following relevant facts. The victim was attacked on October 31, 1989. On the following day, the victim went to the Lynn police station and

described her assailant as a twenty to twenty-five year old black male, five feet three inches to five feet five inches tall, stocky in build, weighing 150 pounds, with a short haircut and wearing a brown-beige leather jacket. The victim examined approximately 300 photographs of black and Hispanic men. The defendant's photograph was not among them. The victim said that one of the photographs depicted a man who was not her assailant but looked like him.

According to the judge's findings, the victim assisted the police in creating a composite drawing of the assailant. Four days later, on November 5, a police officer brought an array of eight photographs of young, black males to the victim's home. This array contained a photograph of the defendant.[1] The victim selected the defendant's photograph as a photograph of a man that looked like her assailant. The police then arrested and photographed the defendant. On November 7, the police officer returned to the victim's home and showed her an array of eight color photographs, including the one of the defendant taken after his arrest. The victim selected the photograph of the defendant and said, "[T]hat was him . . . that was the man."

At trial, the victim identified the defendant as her assailant and also identified the two photographs of the defendant that she had picked out of the arrays. "A photographic identification procedure is constitutionally invalid if the procedure was 'so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.' *Commonwealth* v. *Thornley*, 406 Mass. 96, 98 (1989) (*Thornley II*), quoting *Simmons* v. *United States*, 390 U.S. 377, 384 (1968). The initial burden rests on the defendant to show, by a preponderance of the evidence, that, considering the totality of the circumstances attending the particular identification, the witness was subjected by the State to an identification so unnecessarily suggestive and conducive to irreparable

---

[1]There was evidence at the suppression hearing, important to the defendant's argument on appeal, that the other photographs were taken from the 300 the victim had previously seen.

misidentification as to deny the defendant due process of law. *Commonwealth* v. *Botelho*, 369 Mass. 860, 865-868 (1976), citing *Stovall* v. *Denno*, 388 U.S. 293, 301-302 (1967)." *Commonwealth* v. *Holland*, 410 Mass. 248, 253 (1991).

If the defendant sustains this burden, the out-of-court identifications are inadmissible and on appropriate motion should be suppressed. Also, if the defendant sustains his burden, "the Commonwealth may offer evidence of subsequent identifications [including in-court identification] only if it can show by clear and convincing evidence that they were not the product of the suggestive identification, but had a source independent of the suggestive identification." *Id.*

The uncontested evidence at the suppression hearing was that the photograph of the defendant that was shown to the victim along with seven other photographs on November 5 was the only photograph not previously shown to her. The defendant argues that the November 5 procedure was unduly suggestive because the defendant's photograph was "highlighted by the fact that it was the only one not previously seen by the witness" and by the additional fact that the array consisted of only eight photographs. The defendant states, too, that the November 7 array "was similarly defective." He cites no cases in which, on similar facts, a court has held such procedures to be constitutionally impermissible, and we are not satisfied that the absence of a defendant's photograph from an initial array of 300 photographs and its inclusion in subsequent smaller arrays drawn from the initial array is unduly suggestive. Indeed, it is far from clear that a person in the victim's circumstances would have been aware that only the defendant's photograph was being shown to her for the first time. Without such an awareness, the police procedure would send no message — no suggestion, to the victim.

*Judgments affirmed.*