COMMONWEALTH vs. LEWIS S. LENT, JR.

Berkshire. April 5, 1995. - July 17, 1995.

Present: LIACOS, C.J., WILKINS, ABRAMS, & O'CONNOR, JJ.

*Practice, Criminal,* Dismissal, Indictment. *Grand Jury. Homicide. Juris-
diction,* Of crime. *Statute,* Construction. *Words,* "By means whereof
death ensues."

General Laws c. 277, § 62, authorized the trial of a defendant in the Com-
monwealth for a murder that occurred in New York, where the evi-
dence before the grand jury, in particular the evidence of the defend-
ant's state of mind as related in his confession, was sufficient to
establish that "other violence or injury" was inflicted on the victim in
Massachusetts but for which the ensuing death in New York would not
have occurred. [767-770]

INDICTMENT found and returned in the Superior Court De-
partment on February 14, 1994.

A motion to dismiss was heard by *Daniel A. Ford,* J., and
a question of law was reported by him to the Appeals Court.
The Supreme Judicial Court granted a request for direct ap-
pellate review.

*Patricia A. O'Neill,* Committee for Public Counsel Ser-
vices (*Richard D. LeBlanc & Alan Rubin,* Committee for
Public Counsel Services, with her) for the defendant.

*Gerard D. Downing,* District Attorney (*David F. Capeless,*
Assistant District Attorney, with him) for the Common-
wealth.

*Scott Harshbarger,* Attorney General, & *Pamela L. Hunt,*
Assistant Attorney General, for the Attorney General, ami-
cus curiae, submitted a brief.

WILKINS, J. We consider whether the Commonwealth may
properly indict and try the defendant Lent for the 1990 mur-
der of a young boy whom Lent kidnapped in Pittsfield, took

to western New York State, and then killed. We conclude that the Commonwealth has authority to indict and try Lent for murder, and, therefore, a Superior Court judge properly denied Lent's motion to dismiss the murder indictment.

Pursuant to Mass. R. Crim. P. 34, 378 Mass. 905 (1979), the Superior Court judge reported the propriety of his order denying the motion to dismiss the indictment for murder.[1] We allowed Lent's application for direct appellate review.

Lent argues that the evidence before the grand jury was insufficient to justify indicting him for murder in Massachusetts. See *Commonwealth* v. *McCarthy*, 385 Mass. 160 (1982).[2] More specifically, Lent asserts that, if the death occurred in another State, G. L. c. 277, § 62 (1994 ed.), authorizes murder charges based on action that occurred in Massachusetts, only if the death was proximately caused by action occurring within Massachusetts, and that the facts do not show any act in Massachusetts that was the proximate cause of the victim's death.

We summarize the evidence presented to the Berkshire County grand jury in February, 1994, all of which was furnished by investigators employed by the New York State police. On November 21, 1990, a hunter, in a wooded area in the town of Newfield, about five miles south of Ithaca, New York, found a naked body with a rope around its neck and tied to a tree. The body was that of a twelve year old boy from Pittsfield. The police learned that, after eating his dinner on October 22, 1990, the boy had gone to a mall along route 20 in Pittsfield to ride bicycles with a friend. He was

---

[1] An indictment for kidnapping is not involved in the issue before us.

[2] The evidentiary standard for the issuance of a grand jury indictment (probable cause) is lower than that for submitting a criminal case to a jury (facts warranting a finding of guilt beyond a reasonable doubt). The parties have not argued what standard should apply in deciding whether the motion to dismiss should be allowed. Because we conclude that the facts before the grand jury would warrant the submission of the question of jurisdiction to the jury, we need not decide whether some lesser standard applies, as it generally does in deciding the sufficiency of the evidence before the grand jury to support an indictment. See *Commonwealth* v. *McCarthy*, 385 Mass. 160, 162-163 (1982).

last seen at 5:25 P.M. The victim's friend never met up with him.

In the woods where the police found the body, they also found the boy's clothes and tape which the police believed had been used to bind the boy's wrists and ankles. There was duct tape over the boy's mouth and across his eyes holding a piece of towel in place. Expert opinion stated that the date of death was between October 22 and October 30.

Although the investigation continued, nothing substantial occurred until January, 1994, when Lent, a resident of Pittsfield, was arrested there for an attempted abduction of a young girl. The police learned that Lent was a former employee of a theater located in the Pittsfield mall, and that in the early 1970s he had registered vehicles in Reynoldsville, New York, which is approximately seven miles from where the boy's body was found. The police in Pittsfield found a bag in Lent's van containing duct tape, a knife, a gun, a child's sunglasses, and candy. Lent gave a statement to the police admitting that he had kidnapped the victim, performed certain acts on him, and later killed him in New York.

A New York State police investigator interviewed Lent in Pittsfield and took a statement from him. The defendant said that, on October 22, 1990, he had been working in the theater at the West Pittsfield Plaza. About 5:30 P.M., as he was walking to his van to leave, he saw a boy who had a bicycle and was staring at the theater. "At this time I had an overwhelming desire to have sex with somebody and he looked vulnerable to me." Lent offered the boy five dollars to move chairs in the theater, and the boy accepted. From his van, Lent obtained a bag that he used to carry "items I used for the purpose of kidnapping people with." In the theater, at knife point, Lent taped the victim's hands behind his back. Lent put the boy's bicycle in the van, and under threat of death the victim entered the van. Lent took the victim to his Pittsfield apartment. There Lent made the victim undress down to his underwear and then taped his wrists and ankles to a bed. Leaving the victim tied to the bed, Lent drove to

Silver Lake in Pittsfield and threw the bicycle into the water. On November 18, the victim's bicycle was discovered in Silver Lake.

Lent's statement continues: "I waited a few hours until he fell asleep and I took a razor blade and cut his underpants off him. I wanted to have sex with him and I believed that I could. It was my intention that if he was a successful sex partner, I would keep him alive and use him. However, I had made up my mind that if he was not successful, I would kill him.

"While I was cutting the pants off he woke up. I told him not to move because I did not want to cut him. Even though I knew I may have to kill him I didn't want to hurt him.

"At this time I took all of my clothes off and placed my penis in his hand hoping this would stimulate me sexually. I became partially aroused and attempted to have anal intercourse with [him]. . . . I was not successful in penetrating him. I got off him, got dressed and put a cover over him. It was at this time I knew he had to die."

The next morning Lent took the victim in the van to Newfield, New York, where he led the victim into the woods blindfolded, put rope around his neck, and strangled him to death.

The jurisdiction of the Commonwealth to try Lent for murder is based on G. L. c. 277, § 62, which provides that "[i]f a mortal wound is given, or if other violence or injury is inflicted, or if poison is administered, in any county of the commonwealth, by means whereof death ensues without the commonwealth, the homicide may be prosecuted and punished in the county where the act was committed." Except for insignificant editorial changes, the Commonwealth's statute authorizing the trial of a person for homicide when the victim died in another State has remained unchanged since 1882. See Pub. Sts. 1882, c. 213, § 24.[3]

---

[3]A number of States have different and perhaps more explicit statutes concerning jurisdiction to try a defendant for a death that occurred out-of-State. See, e.g., *State v. Ross*, 230 Conn. 183, 195 (1994), cert. denied, 115 S. Ct. 1133 (1995); *Lane v. State*, 388 So. 2d 1022, 1027-1028 (Fla.

Commonwealth v. Lent.

Because this case involves neither a mortal wound given nor poison administered within the Commonwealth, our attention is focused on whether there was evidence before the grand jury of "other violence or injury" inflicted within the Commonwealth "by means whereof death ensue[d] without the commonwealth." Section 62 makes clear that jurisdiction may exist here if a death ensued elsewhere because of nonmortal violence or injury inflicted in Massachusetts. Thus, § 62 prescribes that the causal connection between the violence or injury and the death need not be immediate, direct, or proximate.

The key words in § 62 for our purposes are "by means whereof death ensues." They cannot fairly be interpreted simply to mean "follows" in a chronological sense. We have recognized that there must be a connection between the Massachusetts violence or injury and a victim's out-of-State death. See *Commonwealth* v. *Travis*, 408 Mass. 1, 10 (1990). The Massachusetts conduct must have led to the victim's death. *Id.* at 8-9. Put another way, the death must be one that would not have occurred but for the violence or injury that was inflicted in Massachusetts. Opinions of this court in the latter half of the last century used the word "ensue" in this "but for" sense. See *Commonwealth* v. *Fox*, 7 Gray 585, 587-588 (1856) (death ensuing from assault and battery warrants conviction only if death "would not have happened but for the assault and battery"); *Commonwealth* v. *Hackett*, 2 Allen 136, 141 (1861) ("if the wound was a dangerous wound, that is, calculated to endanger or destroy life, and death ensued therefrom, it is sufficient proof of the offence of murder or manslaughter"); *Commonwealth* v. *Pierce*, 138 Mass. 165, 175 (1884).

---

1980); *State* v. *Grissom*, 251 Kan. 851, 886 (1992); *Smith* v. *State*, 101 Nev. 167, 169 (1985); *State* v. *Harrington*, 128 Vt. 242, 249 (1969).

There is no suggestion that the application of § 62 to support the Commonwealth's jurisdiction to try Lent presents a question under the Constitution of the United States or under the Constitution of the Commonwealth.

Our cases have not defined the scope of § 62 in detail. The violence that is inflicted can be any bodily harm which is caused by the act of the accused. See *Commonwealth* v. *Macloon*, 101 Mass. 1, 23 (1869) (" 'Inflict' does not necessarily imply direct violence"). We have established that there must be a connection between the Massachusetts violence or injury and the death that occurred elsewhere. *Commonwealth* v. *Travis, supra.* We have just added, in further explanation, that the ensuing death must be one that would not have occurred but for the violence or injury that was inflicted in Massachusetts.

The "but for" test is inherent in our *Travis* opinion. In that case, the victim was kidnapped, bound, and carried away from Fall River in a motor vehicle. *Id.* at 8. About four months later the victim's body was found in Tiverton, Rhode Island. *Id.* at 4. There was no evidence that any injury inflicted in Massachusetts was a mortal wound or was the proximate cause of the victim's death. The evidence was unclear as to whether the victim had died in Massachusetts or in Rhode Island. The point was not crucial because, assuming a Rhode Island death, the evidence was sufficient to warrant a finding beyond a reasonable doubt that the violence and injury that occurred in Massachusetts led to the victim's death, that is, that death would not have ensued in Rhode Island if the violence had not occurred in Massachusetts. The court suggested, but did not decide, that the kidnapping in Massachusetts alone would give jurisdiction under § 62 to try the defendant. *Id.* at 8.

The facts of the case before us are easier to fit within the reach of § 62 than were the facts of the *Travis* case. Although the strangling in the case now before us occurred entirely in New York, there was evidence of Lent's infliction of violence and injury on the victim in Massachusetts, surpassing the level of that shown in the *Travis* case. Lent used a knife to control his victim. He attempted to rape him. There is an additional circumstance, of which there was no parallel in the *Travis* case: evidence of the accused's state of mind. What Lent thought demonstrates a link between the violence

and injury inflicted on the victim in Massachusetts and the death in New York. The death could be found to have ensued because Lent concluded that the object of his violence and injury had to die. A jury could find beyond a reasonable doubt on the evidence that, if Lent had not committed the violence and had not inflicted injuries in Massachusetts, the death would not have occurred. Thus, one could conclude from Lent's confession (and not just by reasonable inference) that but for his violent conduct in Massachusetts there would have been no death.

The order denying the defendant's motion to dismiss the indictment for murder is affirmed.

*So ordered.*