## COMMONWEALTH *vs.* JAMES R. MANNING.

No. 95-P-1199.

Plymouth. November 25, 1997. - May 6, 1998.

Present: BROWN, SMITH, & LAURENCE, JJ.

*Evidence,* Result of illegal arrest, Photograph, Identification, Alias, Fingerprints. *Search and Seizure,* Fruits of illegal arrest. *Grand Jury. Practice, Criminal,* Dismissal, Indictment, Witness, Disclosure of evidence, Continuance, Required finding, Instructions to jury, Jury and jurors. *Armed Assault in a Dwelling. Firearms. Jury and Jurors.*

In a criminal case, the judge did not err in denying the defendant's motion to suppress a booking photograph taken after an arrest which was later ruled unlawful and a subsequent identification of the defendant from that photograph, where the unlawful arrest was for a crime unrelated to the matter on trial, where the police did not display any flagrant misconduct in making the arrest, and where the booking photograph was standard police procedure bearing no relation to the validity of the arrest. [697-700]

In a criminal case, the defendant did not demonstrate that a second array of photographs, which contained his photograph plus eight photographs shown to the victim in a first array, was unduly suggestive, where the victim testified that he did not know whether any photographs in the second array were also in the first array: the judge did not err in denying the defendant's motion to suppress the identification of him from the second array. [700-702]

In a criminal case, sufficient evidence was presented to the grand jury to warrant the indictment of the defendant. [702-703]

A criminal defendant demonstrated no prejudice from the judge's denial of his motion to exclude the testimony of two witnesses, whose identities were disclosed four days before trial, identifying the defendant and two of his aliases, and there was no evidence of bad faith by the Commonwealth in making the late disclosure [703-704]; further, in the circumstances, the judge did not abuse his discretion in denying the defendant's motion for a three-week continuance to prepare for the witnesses' testimony [704-705].

At the trial of a criminal case there was no error in the admission in evidence of two witnesses' testimony that the defendant had used other names in the past and that that information was in fingerprint documents on file with the Federal Bureau of Investigation, where the evidence was relevant to the identification of the defendant and where the judge gave limiting instructions. [705-706]

Evidence at the trial of indictments was sufficient to warrant the defendant's

convictions for armed assault in a dwelling [706] and·unlawful carrying of a firearm [707].

At the trial of an indictment for armed assault with intent to murder, the judge's instruction on the element of malice was correct and no substantial risk of a miscarriage of justice was created by any other portions of the instructions. [707]

At the trial of indictments, the judge did not abuse his discretion in declining to interview a juror with whom the prosecutor had reported having an encounter that the judge termed "relatively innocuous." [707-708]

INDICTMENTS found and returned in the Superior Court Department on February 4, 1991.

Motions to suppress evidence were heard by *Cortland A. Mathers*, J., and the cases were tried before *Robert Malcolm Graham*, J.

*David P. Sorrenti* for the defendant.

*Mary E. Mullaney*, Assistant District Attorney, for the Commonwealth.

SMITH, J. The defendant, James R. Manning, was indicted for armed assault with intent to murder (G. L. c. 265, § 18[*b*]), armed assault in a dwelling (G. L. c. 265, § 18A), assault and battery by means of a dangerous weapon, to wit: a handgun (G. L. c. 265, § 15A[*b*]), and unlawful carrying of a firearm, to wit: a handgun (G. L. c. 269, § 10[*a*]). The indictments arose out of an incident that occurred in Brockton on December 24, 1990, and those indictments charging various forms of assault named Fabian Brown as the victim. A Superior Court jury returned guilty verdicts on all the indictments.

On appeal, the defendant claims that the judge committed error by (1) denying several of his pretrial motions, (2) allowing the Commonwealth's expert witnesses to testify at trial, (3) giving erroneous instructions to the jury, and (4) failing to question a juror about a contact between the juror and the prosecutor. The defendant also claims that the Commonwealth presented insufficient evidence to convict him of the crimes of armed assault in a dwelling and unlawful carrying of a handgun.

We summarize the evidence in the light most favorable to the Commonwealth. We reserve other evidence for discussion in conjunction with certain issues raised. On December 24, 1990, Brown was in his apartment awaiting the arrival of his girlfriend. He heard a knock at the kitchen door, asked, "Who is it?," and heard, "Tony." He opened the door and saw an

individual whom he knew as "Tony." He had seen Tony about ten or twenty times on the street. On one of those occasions, he had given Tony a five dollar bill.

Upon seeing Tony, Brown asked, "What's up?" Tony raised his right hand, which was still in the pocket of his trench coat, and, through a hole in the pocket, shot Brown in the chest. Brown fell onto the kitchen floor. Tony took a ring from Brown's finger and a chain from around his neck. After searching through Brown's apartment, Tony left. Shortly thereafter, Brown's girlfriend arrived at his apartment. Brown told her "Tony T. from Walnut Street" had shot him. He was taken to a hospital by ambulance, where he remained in serious condition for a long time.

On January 6, 1991, Brown selected Tony's photograph from an array as being the person who shot him. Tony was later identified as the defendant, James Manning.

1. *Denial of the defendant's pretrial motions.* The defendant filed a number of pretrial motions, including motions to suppress certain evidence and a motion to dismiss the indictments.

a. *Denial of motion to suppress defendant's booking photograph and subsequent identification.* After Brown was shot, the defendant was arrested for an unrelated crime. A nine millimeter handgun was seized by the police as a result of the arrest. Prior to the trial involved in this appeal, the defendant filed a motion to suppress the handgun, claiming that his arrest on the other charge was illegal because the police lacked probable cause. After an evidentiary hearing, a Superior Court judge allowed the motion.[1]

After the judge's ruling on the suppression motion, the

---

[1]The circumstances of the defendant's illegal arrest, as found by the judge who allowed the defendant's motion, were as follows: during the evening of January 5, 1991 (almost two weeks after Brown was shot) gunshots were heard in the city of Brockton. Two police officers in a cruiser were waved down by a street person. One of the police officers knew that shots had been fired but did not know the exact location where they had been fired. The street person, whom the police did not know, told them, "The guy you're looking for is over there who fired the shots on Spring Street. He is carrying a nine millimeter pistol." The person then pointed to the defendant, who was standing on a nearby street corner.

When the officers tried to stop the defendant, he ran. The officers gave chase, and, during a struggle, the defendant kicked an officer. The defendant was arrested for disturbance of the peace and assault and battery on a police officer. A nine millimeter handgun was found on the floor of the police cruiser

defendant filed a motion to suppress a booking photograph taken after his illegal arrest. He claimed that the booking photograph should be suppressed because it was the "fruit of the poisonous tree," i.e., the illegal arrest. See *Wong Sun* v. *United States*, 371 U.S. 471, 488 (1963). He also moved for suppression of his out-of-court identification by Brown because the booking photograph appeared in the photographic array and was selected by Brown as depicting the person who shot him. The motion was denied. The judge ruled that, as the booking photograph was taken in connection with an arrest for a crime unrelated to the Brown shooting, the use of the photograph in the present case was not tainted by the illegal arrest. The defendant has appealed the denial of his motion.

"[W]here the defendant seeks to suppress information obtained after unlawful police conduct, the issue is whether the evidence challenged has been obtained by exploiting the illegality or by means sufficiently distinguishable to dissipate the taint." *Commonwealth* v. *Fredette*, 396 Mass. 455, 458-459 (1985). *Wong Sun* v. *United States, supra.* The Commonwealth has the burden of establishing that "evidence subsequently obtained is untainted." *Commonwealth* v. *Fredette*, 396 Mass. at 459. To determine "whether the connection between the evidence and the improper conduct has become so attenuated as to dissipate the taint, the facts of each case must be examined in light of three factors: the temporal proximity of the arrest to the obtaining of the evidence; the presence of intervening circumstances; and the purpose and flagrancy of the misconduct." *Id.* at 460. See *Brown* v. *Illinois*, 422 U.S. 590, 603-604 (1975).[2]

In examining these factors we note that the defendant's

immediately after the defendant was removed from the vehicle, resulting in a charge of unlawful carrying of a firearm.

The judge ruled that there was no probable cause to arrest the defendant because there was no evidence presented at the hearing to show the street person's basis of knowledge for his claim that the defendant had engaged in criminal activity or to show his credibility. Further, the information was not corroborated by the police.

The Commonwealth did not file an application for leave to appeal the judge's allowance of the defendant's motion to suppress.

[2]The defendant asks us to adopt the "but for" test, that is, the booking photograph (the fruit of the poisonous tree) would not have come to light "but for" the illegal arrest. The "but for" test has been rejected by the United States Supreme Court as too simplistic a tool for analyzing suppression motions. See *Wong Sun* v. *United States*, 371 U.S. at 487-488; *Commonwealth* v.

photograph was taken as part of the booking procedure on the date of his illegal arrest. Therefore, the time between his arrest and the taking of the photograph was short. Contrast *Commonwealth* v. *Fredette*, 396 Mass. at 460 (five months elapsed between the date of the unlawful arrest and the date of the order to produce fingerprints, making suppression on the basis of temporal proximity unwarranted). Further, there were no intervening circumstances between the defendant's illegal arrest and the taking of his photograph. Contrast *Commonwealth* v. *Bradshaw*, 385 Mass. 244, 258 (1982) (confession was not tainted by illegal arrest where defendant was given Miranda warnings twice before confession, and over an hour elapsed before the statement was made).

The third factor — the purpose and flagrancy of the official misconduct — is particularly relevant to our analysis. See *Brown* v. *Illinois*, 422 U.S. at 604; 4 LaFave, Search and Seizure § 11.4(g), at 320 (3d ed. 1996) ("[S]ound fruit-of-the-poisonous tree analysis necessitates very close attention to 'the purpose and flagrancy of the official misconduct' ").

It is well established that if the illegal arrest was for investigatory purposes, solely to acquire data regarding the defendant, the evidence should be suppressed. *Davis* v. *Mississippi*, 394 U.S. 721, 723 (1969) (fingerprints suppressed where the defendant was detained illegally for purposes of taking his fingerprints to compare with latent prints). *Brown* v. *Illinois*, *supra* at 605 (statement suppressed where illegal arrest, both in design and execution, was investigatory and undertaken in the hope that something might turn up).

Here, the purpose of the defendant's arrest was not to obtain evidence in regard to the Brown shooting. The officers were unaware of the Brown incident at the time they made the arrest. After the defendant's arrest, the officer investigating the Brown

---

*Fredette, supra* at 461 n.4.

In regard to the "but for" test, Mr. Justice Powell's concurring opinion in *Brown* v. *Illinois*, 422 U.S. at 608-609, states that "[t]he Court's rejection in *Wong Sun* of a 'but for' test, reaffirmed . . . [in *Brown*], recognizes that in some circumstances strict adherence to the Fourth Amendment exclusionary rule imposes greater cost on the legitimate demands of law enforcement than can be justified by the rule's deterrent purposes. The notion of the 'dissipation of the taint' attempts to mark the point at which the detrimental consequences of illegal police action become so attenuated that the deterrent effect of the exclusionary rule no longer justifies its cost."

In 4 LaFave, Search and Seizure § 11.4(a), at 235 (3d ed. 1996), the author endorses Justice Powell's statement.

shooting learned that a man fitting the shooter's description had been arrested for unlawfully carrying a nine millimeter handgun, the type of weapon the officer believed was used in the Brown shooting. That officer, who knew nothing of the circumstances of the illegal arrest, then created the photographic array containing the defendant's booking photograph.

The actions of the police in making the illegal arrest did not amount to flagrant misconduct. The police were responding to a tip that the defendant had fired gunshots and was in possession of a firearm. "When a tip . . . concerns the possession of a firearm, it deserves the immediate attention of law enforcement officials." *Commonwealth* v. *Stoute*, 422 Mass. 782, 790 (1996). The fact that months later a judge ruled that the arrest was illegal because the police did not have probable cause does not demonstrate that the police displayed flagrant misconduct under the circumstances present at the time of that arrest.

Finally, the taking of the defendant's photograph during the booking process was standard police procedure (see G. L. c. 263, § 1A), and bore no relation to the purpose or validity of the arrest. See *People* v. *McInnis*, 6 Cal. 3d 821, 825-826, cert. denied, 409 U.S. 1061 (1972)[3] (booking photograph from unrelated arrest not suppressed, because no evidence of exploitation or other improper conduct, and no link other than coincidence between that arrest and offense being tried).

In sum, we hold that the judge did not commit error when he denied the defendant's motion to suppress the booking photograph and the subsequent identification of the defendant's photograph as the person who shot Brown.

    b. *Denial of defendant's motion to suppress identification of*

---

[3]The defendant argues that *Commonwealth* v. *Crowe*, 21 Mass. App. Ct. 456, 461, cert. denied, 479 U.S. 838 (1986), controls this matter. In *Crowe*, the defendants were arrested for kidnapping and, after their arrests, they were photographed for the purpose of composing a photographic array. The victim selected the defendants' photographs. A judge allowed the defendants' suppression motion in part, ruling that the defendants had been illegally arrested and suppressing the photographic identification. *Id.* at 461 & n.5.

The *Crowe* decision is not relevant. In *Crowe*, the defendants were arrested for the same crime that gave rise to their photographic identification; here, the defendant was arrested for an unrelated crime and the booking photograph was taken as a result of that arrest. Further, in *Crowe*, the police took the defendants' photographs for the purpose of composing an array; here, the defendant was photographed as a result of a routine booking procedure and not for the purpose of composing a photographic array to show to Brown.

*the defendant on the ground it was unduly suggestive.* The defendant also moved to suppress the photographic identification on the ground that the identification was unduly suggestive because the array consisted of nine photographs, eight of which had been previously shown to Brown.

"A photographic identification procedure is constitutionally invalid if the procedure was 'so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.' " (Citations omitted.) *Commonwealth* v. *Holland*, 410 Mass. 248, 253 (1991). "The initial burden rests on the defendant to show, by a preponderance of the evidence, that, considering the totality of the circumstances attending the particular identification, the witness was subjected by the State to an identification so unnecessarily suggestive and conducive to irreparable misidentification as to deny the defendant due process of law." *Id.*

The undisputed facts are that a week after the shooting of Brown, a detective showed Brown a photographic array consisting of ten photographs. The defendant's photograph was not in the array. Brown did not identify anyone in the array as the assailant. On January 6, 1991, Brown looked at a stack of nine photographs that included the defendant's booking photograph; all the other photographs had been in the array shown to Brown the previous week.[4] Brown selected the defendant's photograph, which was the third photograph in the stack of nine photographs, and identified it without seeing the other six photographs. Brown testified, and the judge found his testimony to be credible, that he did not realize that eight of the photographs were from the first array he had viewed.[5] See *Commonwealth* v. *Smith*, 414 Mass. 437, 443 (1993). In *Smith*, the police showed the complainant an array of eight photographs, of which the defendant's photograph was the only one not previously seen by the complainant. The court held that "it is far from clear that a person in the victim's circumstances would have been aware that only the defendant's photograph was being shown to her

---

[4]Two of the photographs in the original array had been removed and the defendant's photograph added.

[5]The judge did not make written findings of fact. His notations on the suppression motion read, "Motion denied after hearing. Reasons etc. declared in the record." The record shows that the judge told the lawyers after hearing the evidence, "[a]s far as [Brown] knew, he didn't know whether the other photographs were contained in the first array."

for the first time. Without such an awareness, the police procedure would send no message — no suggestion, to the victim." *Ibid.* The judge did not commit error in denying the defendant's motion to suppress the photographic identification.[6]

c. *Denial of the defendant's motion to dismiss the indictments.* The defendant filed a motion to dismiss the indictments charging him with unlawfully carrying a firearm and armed assault in a dwelling, claiming that insufficient evidence was presented to the grand jury on those charges.

In *Commonwealth* v. *McCarthy*, 385 Mass. 160, 163 (1982), the Court held that "at the very least the grand jury must hear sufficient evidence to establish the identity of the accused . . . and probable cause to arrest him . . . ." Therefore, "[t]he evidentiary standard for the issuance of a grand jury indictment (probable cause) is lower than that for submitting a criminal case to a jury (facts warranting a finding of guilt beyond a reasonable doubt)." *Commonwealth* v. *Lent*, 420 Mass. 764, 765 n.2 (1995). An indictment may be based entirely on hearsay. Mass.R.Crim.P. 4(c), 378 Mass. 849 (1979).

Brown did not testify before the grand jury because he was transferred from a hospital in Brockton to Jackson Hospital in Philadelphia to recover from his gunshot wound. The Commonwealth presented evidence from a police officer that Brown stated that the defendant had shot him. The officer also testified that the doctor treating Brown had told him that he thought the bullet, which because of its position could not be removed from Brown's body, was a large bullet such as a nine millimeter slug. There was also evidence presented to the grand jury that the defendant had access to a nine millimeter handgun because it had been discovered in the police cruiser after his arrest for an unrelated crime.

The defendant argues, however, that because evidence of the handgun had been suppressed months after the grand jury issued its indictments, we should not consider that evidence when we determine the sufficiency of the evidence before the grand jury. A grand jury may return an indictment even if it is based,

---

[6]In his motion to dismiss the indictment (discussed in the next section), the defendant claimed that the Commonwealth had presented deceptive and misleading information to the grand jury by not making it clear that the second photographic array was almost identical to the first array. We hold that the failure to present that evidence was not deceptive or misleading, especially when Brown was unaware of the fact that the array was similar.

in part, on incompetent evidence. *Costello* v. *United States*, 350 U.S. 359, 362 (1956). *Commonwealth* v. *Robinson*, 373 Mass. 591, 593 (1977). We therefore do not find it necessary to eliminate from our analysis evidence of the type of gun seized as a result of the defendant's illegal arrest. In any event, even if we do not consider the evidence of the handgun, there was sufficient evidence that the defendant shot Brown with a handgun that had a barrel less than sixteen inches in length.

The defendant argues that there was insufficient evidence presented on the armed assault in a dwelling indictment because the Commonwealth failed to show that the assault happened in a dwelling. Although the Commonwealth presented more detailed evidence at trial regarding the charge of armed assault in the dwelling, there was sufficient evidence presented at the grand jury level to meet the appropriate standard.

2. *Admission in evidence of certain witnesses' testimony.* In order to present evidence at the trial that the defendant had used, on prior occasions, aliases of "Tony" or "T," names by which he was known to Brown, the Commonwealth arranged to have the defendant's fingerprints taken while he was in jail awaiting trial. The fingerprint card was then sent to the Federal Bureau of Investigation (Bureau) in order to compare the defendant's fingerprints with those on file. The defendant's fingerprints matched fingerprints that were on file under the names of "Tony Russell" and "Thomas."

On the first day of trial, the defendant filed a motion to exclude the testimony of two Commonwealth witnesses, the person who took the defendant's fingerprints at the jail and the person from the Bureau who would testify as to the fingerprint match and the aliases. The motion was based on various grounds. After listening to the arguments of counsel, the judge denied the motion. The following day, the defendant renewed his motion and also requested a continuance in order to prepare to examine the witnesses. Both requests were denied. On appeal, the defendant claims error for several reasons.

a. *Claim that Commonwealth violated pretrial discovery order.* In the conference report, the Commonwealth agreed to furnish the names of its witnesses and to provide to the defendant any documents that formed the basis of their testimony. The defendant argues that the two witnesses should not have been allowed to testify because the Commonwealth violated the pretrial conference order in that (1) the Com-

monwealth did not furnish the names of the witnesses until four days prior to trial, and (2) the defendant did not receive the fingerprint documents until the day that trial started.

"The trial judge has significant discretion in deciding whether late-discovered or late-disclosed witnesses should be excluded from testifying, or whether a continuance is appropriate." *Commonwealth* v. *Trapp*, 423 Mass. 356, 363-364, cert. denied, 519 U.S. 1045 (1996).

Here, the judge ruled, based on the record, that defense counsel knew months before the trial that certain Bureau documents could become evidence at trial and therefore Bureau personnel could be witnesses. Further, defense counsel received the names of the two witnesses four days before trial, and the witnesses did not testify until the third day of trial. The defendant had a full week to prepare for their testimony. While it is beyond dispute that the names should have been supplied earlier, the judge did not find, and the record does not show, that there was any evidence of bad faith by the Commonwealth in the late disclosure. See *Commonwealth* v. *Donovan*, 395 Mass. 20, 24 (1985). The record clearly demonstrates that the Commonwealth had considerable difficulty in obtaining the Bureau information. In any event, months before the trial, the Commonwealth disclosed to defense counsel the defendant's criminal record, including his sixteen aliases.

Finally, we fail to see how the defendant was prejudiced by the late disclosure. He does not make a claim before us that the fingerprints in the Bureau documents were not his prints, nor does he argue what would have turned up as a result of further investigation or how prompt disclosure of the witnesses' identities could have assisted him in his trial preparation.

We hold that the judge was well within his discretion in denying the defendant's motion to exclude the testimony of the two witnesses.

b. *Denial of continuance.* After the judge refused to exclude the two witnesses' testimony, the defendant requested a three-week continuance, claiming that he needed the additional time to prepare to examine the witnesses, to retain an expert to review the fingerprint documents, and to present rebuttal witnesses, if necessary, on the issue of the defendant's identity. The judge denied the motion, noting that the defense was not surprised by the contents of the witnesses' testimony and that Brown, who was paralyzed and in a wheel chair, had been brought from

Philadelphia for the trial. The judge also noted that it was the defendant who had sought an early trial date even though the defense was aware that the Bureau documents had not yet arrived.

Further, the judge told counsel that he would have the witnesses first testify outside the presence of the jury, thereby providing the defendant with a preview of their testimony, and that he would give a limiting instruction to the jury. On this record, we hold that the judge did not abuse his discretion in denying the defendant's motion for a continuance.

3. *Claim that admission of witnesses' testimony was error.* The defendant claims that the admission in evidence of the witnesses' testimony that he had used aliases in the past and that this information was in the Bureau's files was error because such testimony was more prejudicial than probative.

"A defendant in a criminal trial may be prejudiced if the jury's attention is directed to an unproven allegation that the defendant uses an alias. This is because the use of an alias frequently is associated with criminality." (Citations omitted.) *Commonwealth* v. *Sheline*, 391 Mass. 279, 286 (1984).

"Whether evidence is relevant in any particular instance and whether the evidence is so inflammatory in nature as to outweigh its probative value and thus preclude its admission are questions addressed to the sound discretion of the trial judge." *Commonwealth* v. *Booker*, 386 Mass. 466, 469 (1982).

Here, the evidence was clearly relevant because it went to a critical issue in the case — the identity of the defendant as the shooter. The defendant's fingerprints matched fingerprints in the Bureau's files which were under the names of "Tony" or "Thomas." Brown knew the defendant before the shooting by the name of "Tony" or "T."

The witnesses did not use the word "alias" at any time during their testimony. No details of the defendant's past crimes were offered in evidence and the fingerprint documents were sanitized so that the jury would not be aware of the reasons why the defendant's fingerprints were on file at the Bureau. On cross-examination, the Bureau witness testified that the Bureau kept such records for job applications, alien cards, military cards, and government applications.

Further, the judge instructed the jury that the fingerprint evidence was offered for a limited purpose: identification. He

specifically forbade the jury from making any judgments in regard to the defendant's character based on the evidence. That instruction was given twice, once at the time of the testimony of the Bureau witness, and again during the judge's final instructions. The defendant did not object to the instructions. There was no error.

4. *Denial of required finding of not guilty.* The defendant claims that the judge committed error in denying his motion for a required finding of not guilty on the indictments charging him with armed assault in a dwelling and unlawfully carrying a firearm.

a. *Armed assault in a dwelling.* The defendant contends that the Commonwealth failed to present sufficient evidence beyond a reasonable doubt that the assault took place while the defendant was in Brown's apartment. He argues that the undisputed evidence shows that Brown was shot while the assailant stood in the hallway and that only after the shooting did the assailant enter the apartment. The defendant's argument is without merit. It ignores the evidence of what happened after Brown was shot.

"Conviction under G. L. c. 265, § 18A, of armed assault in a dwelling requires proof of three elements: (1) entry of a dwelling while armed; (2) an assault on someone in the dwelling; and (3) a specific intent, accompanying the assault, to commit a felony." *Commonwealth* v. *Donoghue*, 23 Mass. App. Ct. 103, 111-112 (1986), *S.C.*, 399 Mass. 1101, cert. denied, 481 U.S. 1022 (1987). *Commonwealth* v. *Ruiz*, 426 Mass. 391, 393 (1998).

Here, the evidence presented by the Commonwealth demonstrated that the defendant shot Brown from the doorway of Brown's apartment. After being shot, Brown fell to the kitchen floor and was unable to move. The defendant entered the apartment, closed the kitchen door, pulled a gold ring off Brown's finger, and snapped a gold chain from Brown's neck. Brown asked the defendant "why" and was told to "shut up." The defendant searched Brown's pockets. During the entire time, the defendant kept his right hand in his pocket and, with his hand in his pocket, pointed the gun at Brown's head. Brown closed his eyes because he thought the defendant was going to shoot him again. The defendant then left.

There was sufficient evidence to allow the jury to find that the defendant entered Brown's apartment while armed and assaulted him with the intent to commit robbery.

b. *Unlawfully carrying a firearm.* The defendant claims that the Commonwealth did not present any evidence as to the nature of the gun that shot Brown or its barrel length. The defendant is correct in asserting that no firearm or casings were found at the scene. In addition, the bullet lodged in Brown's spine and because of its location it could not be removed. Thus, no firearm, casings, or bullet were offered in evidence.

The evidence as to the type of weapon used was circumstantial. "[C]ircumstantial evidence is competent to establish guilt beyond a reasonable doubt." *Commonwealth* v. *Gilbert*, 423 Mass. 863, 868 (1996). Brown testified that the defendant shot him through a pocket in a trench coat that the defendant was wearing. The pocket covered the entire gun except for its mouth which was only as big as one of Brown's fingertips. The defendant used one hand to fire the gun. Brown described the gun as a handgun. This evidence was sufficient to show that the barrel of the gun was sixteen inches or less.

5. *Claimed error in jury instructions.* The defendant claims that the judge's instructions to the jury contained several errors. At trial, the defendant's only objection related to the issue of malice in the instruction for armed assault with intent to murder. That instruction was correct. *Commonwealth* v. *Nardone*, 406 Mass. 123, 132 (1989).

We have reviewed the other portions of the judge's instruction that the defendant now claims constitute error. None of them, in our view, created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Torres*, 420 Mass. 479, 483 (1995).

6. *Failure to question juror about contact with the prosecutor.* During a recess in the trial, a juror was walking behind the prosecutor as they entered the courthouse. The juror said, "Hello," and told the prosecutor, "You're doing a good job." The prosecutor immediately told the juror that he was not allowed to have any contact with jurors. The prosecutor then informed both the trial judge and defense counsel of the encounter.

Both attorneys suggested to the judge that an inquiry be made of the juror. The judge decided not to interview the juror because, according to the judge, the encounter was a "relatively innocuous one." The defendant did not object to the judge's decision.

"Determination of potential juror prejudice is a matter within the sound discretion of the trial judge." *Commonwealth* v. *Sam-*

*uel*, 398 Mass. 93, 96 (1986). It would have been better practice for the judge to interview the juror but we cannot say that the judge abused his discretion in not doing so.

We have reviewed all of the claimed errors. Based on the record, we conclude that the defendant received a fair trial. We affirm the judgments entered below.

*Judgments affirmed.*